STATE, Respondent v. CHRISTMAS, Appellant

(162 N.W.2d 125)

(File No. 10475.  Opinion filed October 29, 1968)

**J. I. Milton Schwartz,** Rapid City, for defendant and appellant.

**Frank L. Farrar,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, **R. James Brennan,** Pennington County State's Atty., Rapid City, for plaintiff and respondent.

RENTTO, Judge.

Willie Bruce Christmas, Jr., was charged with the crime of rape in the second degree. It was based on the state's claim that he had accomplished an act of sexual intercourse with one Davine Shangreaux, a female under the age of 18 years and not his wife. Since the evidence did not establish any sexual penetration the crime of rape was not submitted to the jury. It was instructed to consider only the included offenses and returned its verdict finding him guilty of assault with intent to commit rape. He appeals from the judgment of imprisonment entered thereon.

The girl here involved was also the victim of the ravishments dealt with in State v. Barber, 83 S.D. 289, 158 N.W.2d 870, and State v. Fulks, 83 S.D. 433, 160 N.W.2d 418. The assault upon her which is the basis of this prosecution was commenced right after the Barber incident and terminated just

before the Fulks affair. They all took place in the same bed-
room and on the same bed. The only matter urged in this pro-
ceeding, not disposed of in the other two cases, is the defend-
ant's claim of a lack of foundation for the admission in evi-
dence of certain articles of bed clothing taken from the bed in
question. These were also in evidence in the other two cases.

The attack on the complainant took place shortly before
midnight on March 22, 1967 in Unit 19 of the Horse Shoe Motel
at Rapid City, South Dakota. She and her cousin Violet Poor
Thunder had been forcibly taken there by the defendant and
three other negro airmen. About midnight the girls left the
motel and after hiding in a nearby cafe for awhile arrived at
the place where they were living about 3:30 the morning of the
23rd. The lady with whom they were staying made some in-
quiries into the incident. As a result the city police began an
investigation of the matter. They arrived at the described motel
about 6 a. m. just as four colored men came out of Unit 19.
These men were taken to the police station for interrogation and
apparently jailed thereafter.

At 4 o'clock that afternoon another police officer went to the
motel with a search warrant. The lady in charge gave him a
key with which he unlocked the door to Unit 19. He made a
search of it and took from the bed on which this assault oc-
curred a gold colored blanket, a mattress pad and two sheets.
He also secured from the complainant the blue sweater which
she was wearing when the described acts took place. These
articles he sent to the F.B.I. laboratory. The special agent who
there examined them testified that in his opinion the blue orlon
fibers which he found on the two sheets, the mattress pad and
the blanket could have originated from the sweater; and that
the gold acrylic fibers found on the sweater could have origin-
ated from the blanket.

Defendant suggests that this testimony became irrele-
vant when the charge of rape was not established. This con-
tention is without merit. Its relevancy arises from the fact that
it could be viewed as corroborating the complainant's state-
ment that she was on the bed in question when the assult took

place. To this extent it tends to establish a fact in controversy. That issue is present whether the charge is rape or assault with intent to commit rape.

He also challenges the evidentiary competence of the exhibits taken from the bed and which the special agent examined in arriving at his opinions. Wharton's Criminal Evidence, 12th Ed., § 148. It is his position that because the testimony does not show that these articles were under surveillance on March 23rd from about 6 a. m. when the four colored men left the motel, until 4 p. m. when the police officer seized them under the search warrant, a sufficient foundation for their examination by the special agent and subsequent admission in evidence was not established. No one testified that they were in substantially the same condition when sent to the expert as at the time the offense took place.

▮ Physical articles which are rationally probative as to issues which are in controversy are admissible in evidence if properly identified and shown to be in substantially the same condition as at the time when the crime was committed. A prima facie showing that such is the case is sufficient. 22A C.J.S. Criminal Law § 709; 32 C.J.S. Evidence § 607; 29 Am. Jur.2d, Evidence, § 774. If it is reasonably probable that the object has not been tampered with it is admissible in evidence. State v. Garrington, 11 S.D. 178, 76 N.W. 326; Breeding v. State, 220 Md. 193, 151 A.2d 743; State v. Parker, Iowa, 151 N.W.2d 505. The determination of this question is for the trial judge in the process of which he exercises a judicial discretion. State v. Husman, 66 S.D. 530, 287 N.W. 30. He rules on its competency, but it is still for the jury to decide its credibility.

▮ The trial judge must be satisfied in reasonable probability that the article has not been changed in important respects. Permissible changes are such as are not likely to mislead the jury. McCormick on Evidence, page 384. In arriving at his conclusions he must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it. United States v. S. B. Penick & Co., 2 Cir., 136 F.2d 413; Gallego v.

United States, 9 Cir., 276 F.2d 914; Nixon v. State, 204 Md. 475, 105 A.2d 243. He may also give weight to the presumption that an article continues in the same condition. 2 Wigmore, Evidence, 3d Ed., § 437(1).

■ We think the showing sufficient to justify the admission in evidence of the challenged exhibits. See State v. Parker, supra, where eight unguarded hours did not render the objects inadmissible. The police officer who made the search of Unit 19 described its general appearance at that time. From this the court could reasonably infer that it had not been made ready for occupancy or occupied between 6 a. m. and 4 p. m. on that day.

■ The defendant makes complaint of another matter. The policeman who conducted the search of the unit, when testifying, volunteered that he observed a reddish brown substance on the bottom sheet which appeared to him to be blood. On defendant's motion that statement was stricken and the jury admonished to disregard it. Our study of the record reveals that this was the only reference to such spot in the entire trial. In the circumstances here present we are unable to see in this statement anything prejudicial to the defendant. Apparently he did not so regard it when it was made since he did not request a mistrial.

Affirmed.

All the Judges concur.