STATE, Respondent v. WATSON et al., Appellants

(231 N.W.2d 839)

(File No. 11516. Opinion filed July 11, 1975)

William J. Janklow, Atty. Gen., and Earl Mettler, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

John R. Kabeiseman and J. W. Abbott of Brady, Kabeiseman, Light & Reade, Yankton, for defendants and appellants.

DUNN, Chief Justice.

The defendants appeal from a conviction in Bon Homme County Circuit Court of knowingly and intentionally inhabiting a room wherein any controlled drug or substance is being illegally stored or used on or about May 26, 1973, in contravention of SDCL 39-17-110.

The defendants in their appeal claim that there was an illegal search of the premises; that it was error to permit introduction of the hashish pipe and attached bags of marijuana because of failure to prove chain of custody; that defendant Randall Skorpik should have had his case dismissed as he was not in the room where the alleged drugs were found when arrested; and that the defendants were not inhabitants of the room at the time of arrest. We affirm.

This incident occurred at property owned by Charles Skorpik just east of Tyndall, South Dakota, which was supposedly unoccupied. Charles Skorpik had requested the sheriff some

months before to keep an eye on the property because machinery had been stolen from the premises on various occasions. On the evening of May 26th, in response to a call from a neighbor that someone was "raising a little heck" on the Skorpik property, the sheriff investigated and found several unfamiliar cars in the yard and heard loud music emanating from the house. He returned to Tyndall for assistance and returned with several law officers. Finding the front door nailed shut, the sheriff proceeded around to the back door. As he passed a window where the shade was partially drawn, he looked in and saw six to eight persons sitting in the room in a circle with a cardboard box in the middle and what he recognized to be a waterbowl or hashish pipe (used for smoking marijuana) in the box. He then entered the back door, identified himself to one of the defendants (Randall Skorpik, son of the owner Charles Skorpik) in the kitchen, and, upon smelling marijuana, entered the living room where he arrested the persons present and confiscated the materials.

The defendants were charged and convicted in a court trial of violating SDCL 39-17-110 which reads:

"Any person who knowingly or intentionally inhabits a room wherein any controlled drug or substance is being illegally stored or used shall be guilty of a misdemeanor and upon conviction therefor shall be sentenced to not more than one year in the county jail and fined not more than five hundred dollars, or by both such fine and imprisonment."

Defendants first raise the issue of the unconstitutionality of the search and seizure. Both the defendants and the state argued the "plain view" doctrine as stated in Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067. There the Supreme Court stated:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

Resolution of this issue turns on whether the officer had a right to be in the position to have a view.

■ The state first contends that there was a breach of the peace because of the volume of the music heard at this time of night, and, that this being a misdemeanor committed in his presence, the sheriff had a right to lawfully enter the property in response to this violation. This argument would seem to lack merit, and it is difficult to imagine what or whose peace was breached by the loud music emanating from a supposedly abandoned and isolated house a couple of blocks east of Tyndall.

■ The second argument is on sounder ground. The sheriff had been requested to check the property by the owner, and he first came to the property this night in response to a complaint that someone was "raising a little heck" on the Skorpik property. Upon arriving, he found strange autos and loud music coming from a supposedly abandoned house. He then checked out the house, as was his duty. It would be an unreasonable and unwarranted restriction on his presence on the property that night to limit him to checking only the machinery as is suggested.

It is concluded that he had a lawful right to be on the property. As he passed the window, he had not only a right but a duty to look in and see what was there to be seen. For his own protection he would have the right to check on the situation he was getting into upon entering the house. We would thus hold under Harris, supra, that this was no illegal search or seizure under these circumstances.

■ The hashish pipe and marijuana were properly admitted in evidence. While the chain of testimony was not completely proven, there was substantial and credible testimony to establish that the pipe and marijuana were the same articles taken from the room and that they were in substantially the same condition at the time of trial. State v. Christmas, 1968, 83 S.D. 506, 162 N.W.2d 125, and cases cited therein. Further, the chain of custody was not in dispute up until the time the sheriff delivered the items to the state chemist. The number placed on the pipe by the chemist was still apparent at the time of trial. Any further foundation needed was furnished by photographs taken of the items on the evening they were seized.

■ Likewise, there is no merit that the case against

defendant Randall Skorpik should have been dismissed because he was in the kitchen instead of the living room at the moment the sheriff entered. There is some evidence that Skorpik (son of the owner) was actually residing in the house at the time of the incident, and his presence and interest in the house are sufficient to circumstantially prove that he intentionally occupied the room where the marijuana and the hashish pipe were found.

This leaves the question of the definition of "inhabiting a room" as defined in the statute. The defendants contend that their mere presence in the room is not sufficient under the statute. Various definitions are cited, varying from "regularly living there" to "mere presence." Suffice to say that the trial court's interpretation of habitation under this statute is not erroneous.

It is conceivable that some completely innocent person could appear at a "pot party," and, while sensing that marijuana was in the room by smell or otherwise, could be arrested and convicted under this statute; however, statutes do not have to satisfy all hypothetical situations as long as they are not violative of the rights of the defendants in this case. Big Eagle v. Andera, 1975, 8 Cir., 508 F.2d 1293.

We are not dealing with this hypothetical situation here. The pipe (still warm and containing marijuana), as well as the bags of marijuana, was in the middle of the room with the defendants circled around it. It is true that the defendant Boggess did claim to the officers that he had not smoked "that evening" because he was to be involved in a wedding. But there is no contention or evidence that any one of the defendants was not a wilful participant in the party. The trial court did not err in finding that the defendants under these circumstances were knowingly inhabiting a room where a controlled substance was stored or used.

Affirmed.

WINANS, WOLLMAN and DOYLE, JJ., concur.

COLER, J., dissents.

COLER, Justice (dissenting).

I would reverse on the basis that this was an unconstitutional invasion of defendants', Watson and Skorpik, expectations of privacy in their residence without their consent. The factual situation in this case is strikingly similar to the facts in State v. Davis, 1975, Iowa, 228 N.W.2d 67. The Iowa court therein fully analyzed Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 and Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 and we would do well to follow their lead.

At the preliminary hearing, immediately following the hearing on the motion to suppress, the committing magistrate, Paul J. Kern, stated, "The defense had an opportunity to bring forth evidence concerning the allegation in the affidavit as to the fact whether or not this was Randell Lee Skorpik's home at the time, and therefore I am going to deny this allegation on the basis that the sheriff was acting under the directions of the father to watch that lot and I consider that a continuing direction." Judge Kern further stated, "Now in so doing, under the plain sight doctrine, or plain view doctrine, when he looked through the window and saw a hashish pot or marijuana pot, I would think under those circumstances that he should see what was going on. *As far as entering the premises at that time I don't believe that he had sufficient probable cause at that time."* (emphasis supplied) This was on the basis that looking out for machinery justified investigation of the house and activities therein.

During the course of the same hearing, but thereafter, Charles Skorpik, father of defendant Randall Lee Skorpik, did testify that the premises were occupied by his son. The mother of the defendant Skorpik, as well as college friends and several people who performed services at the house, related facts to sufficiently establish that this house, however dilapidated, was the home of two of these defendants. I believe the trial court erred by considering only the transcript of the suppression hearing and not the subsequent evidence relating to those defendants' occupation of the dwelling giving rise to their

reasonable expectation of privacy under Katz and Coolidge, supra.

The evidence admitted was not in the plain view of the sheriff who walked by a window of the living room when the shade was lowered half way and the only available light sifted in from an adjoining room. The sheriff only glanced into that window, without stealth, while passing some three feet from the house. The sheriff, as he passed that point, stepped upon a window or a pane of glass causing a loud crash. Thereupon, someone inside lowered the shade of the window to six or eight inches from the bottom of the window. It was at this time that the sheriff's curiosity was aroused and he returned to peep into the window, saw a box in the middle of the room with young men sitting around it and at least suspected he saw a hashish pipe, which he later seized.

From the record in this case the sheriff did not believe that he had any reasonable grounds to arrest until he actually seized the paraphernalia and the baggies in the living room which he entered without consent of anyone present and certainly without the consent of the owner of the premises. When young Skorpik blocked his way, he told him he had a warrant for his arrest but he did not serve it and obviously used it as a means of psychologically convincing Skorpik that he had no right to resist his entry.

I am further convinced that the evidence before the trial court does not support a finding that the sheriff was allowed to do what he did because he was asked by the owner of the machinery to look out for the machinery. There is nothing in the testimony of the neighboring farmer, who reported to the sheriff before 9:00 p. m. that evening, to indicate anything but an assemblage of persons at the house. No crime was reported, only their presence. Quite obviously, the sheriff was well aware that it was not a den of thieves because it was somewhat over four hours after being notified of their presence that he arrived at the scene with his posse. The machinery that he was asked to guard was, for the most part, more than a block away from the dwelling.

The sheriff arrested no one until after he had entered the

living room and seized the evidence. This practice our court has long condemned. State v. Jackson, 1933, 61 S.D. 499, 250 N.W. 55; State v. Lane, 1957, 76 S.D. 544, 82 N.W.2d 286; State v. McCreary, 1966, 82 S.D. 111, 142 N.W.2d 240. If there had been a valid arrest based upon probable cause and his window peeping had given him confidence that a crime had been committed in his presence, his timely arrest and search might have been justified under the plain view doctrine.