**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Dennis HERMAN, a/k/a Dennis Oleson, Defendant and Appellant.**

No. 11715.

Supreme Court of South Dakota.

April 29, 1977.

William J. Janklow, Atty. Gen., Charles L. Dorothy, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

Charles Poches, Jr., Fort Pierre, for defendant and appellant.

ZASTROW, Justice.

The defendant, Dennis Herman, appeals from his conviction in the Circuit Court of the Sixth Judicial Circuit for the unauthorized distribution of a controlled substance to a narcotics informant. We reverse.

The informant, Richard Carlson, was arrested and charged with possession of marijuana at Howard, South Dakota. Because of his cooperation in reporting drug activities to Miner County law enforcement officials, he was placed on probation following a guilty plea to misdemeanor possession of marijuana.

Under South Dakota Division of Criminal Investigation (D.C.I.) sponsorship, Carlson eventually became a paid narcotics informant for law enforcement agencies in several counties in the state. In November of 1974, he was employed by Hughes County to "investigate" drug activity and attempt to purchase drugs and narcotics from "drug pushers." In this capacity, Carlson admittedly smoked and dispensed small amounts of marijuana to others in order to avoid "blowing his cover."

Carlson unsuccessfully approached the defendant, proposing to purchase marijuana from him on at least two occasions. During the evening of December 17, 1974, Carlson, by chance, encountered the defendant and a girl at a Pierre tavern and inquired of the availability of drugs. According to Carlson, the defendant indicated he had "bags of marijuana" which he would sell at $25 per bag. Carlson and defendant proceeded to defendant's car where the defendant sold one bag of "marijuana" to Carlson.

The defendant presented testimony attempting to establish an alibi defense. He and a girl friend testified that they were at her apartment for a period of time from one hour prior to the alleged sale until three hours thereafter. They further testified that at no time on December 17, 1974, did they have an occasion to see or speak to Carlson, although they admitted being at the tavern earlier in the evening.

The defendant's assignments of error raise three issues: (1) credibility of the informant, (2) sufficiency of evidence, and (3) admissibility of physical evidence.

■■ The defendant alleges that the evidence was insufficient to support the verdict because it rested solely upon the informant whose testimony was unbelievable. The allegation that Carlson's testimony was inconsistent and unworthy of belief does not present a question reviewable by this court. The inconsistencies in the testimony of Carlson were fully presented to the jury by defendant's counsel in his cross-examination and closing argument. It is the function of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses and the weight of their testimony. This court will not interfere with the discretion of the jury to believe or disbelieve witnesses. *State v. Weinandt,* 1969, 84 S.D. 322, 171 N.W.2d 73; *State v. Shank,* 1975, S.D., 226 N.W.2d 384.

■ Carlson's subsequent conviction for perjury in Beadle County (see *State v. Kissner,* 1977, S.D., 252 N.W.2d 330) did not

involve any testimony in this case. Although it does emphasize the inherent difficulties of using "narcotics informants" (see *State v. Gerber,* 1976, S.D., 241 N.W.2d 720), that conviction raises no question on this appeal. If there is evidence of the use of perjured testimony, it must first be presented to the trial court for a factual finding by a motion for a new trial (SDCL 23–50–2(8)), a motion to remand (SDCL 23–51–15), or a petition for post-conviction review (SDCL 23–52–1(6)). There having been no such proceedings or evidence, there is no issue for this court to decide. See 24 C.J.S. Criminal Law § 1606(14).

The admissibility of the physical evidence creates a different problem.

At the preliminary hearing, Carlson testified that following the purchase of the one bag of "marijuana" from the defendant on December 17, 1974, he retained it in his possession until 6:30 a. m., on December 18, 1974. Sometime thereafter, he delivered it to Herb Hollingsworth, Drug Enforcement Supervisor for the Attorney General. Hollingsworth testified that after receiving the bag from Carlson, he locked it in his desk until he gave it to D.C.I. Special Agent Jerry Baum during the afternoon of December 18, 1974. Agent Baum confirmed that receipt and testified further that he assigned a case number to the bag and mailed it to the State Chemical Laboratory at Vermillion.

Counsel then stipulated to the admission of the following laboratory report in lieu of the oral testimony of Roger Mathison:

"STATE CHEMICAL LABORATORY *State's*
Vermillion, S.D. *Ex. 2*
*3–13–75*
Jerry Baum, Special Agent, DCI *LLS*[1]
P. O. Box 1237

Pierre, South Dakota Date *2/7/75*
Sample Description *Material for Marihuana*
Submitted by *You* on *12/20* , 19*74*
Case No. *47700–15* Lab. No. *75–4208* Delivered
by *First Class Mail on 12/20/74 A.M.*
Tetrahydracannabinol in 0.95 oz. Cannabis.
Analyst *Roger Mathison*
*Herman"*

The record of the preliminary hearing shows that although marked, a plastic bag was not identified or admitted as evidence. The state concedes that the bag of material identified as marijuana by the laboratory report was not in fact the bag purchased from the defendant.

At the trial, the state discovered the error and brought forth Exhibit 1, which consisted of two plastic bags, one inside the other. The outer bag had the following information written on tape and paper stickers:

"DATE *10:30 A.M.* EVERIDENCE
*12–19–74*
NUMBER DIVISION OF CRIMINAL INV.
*HDH* Pierre, So. Dak. 57501

#11715

(Illegible) *7–8–75 75–146*
DATE EVIDENCE
*12–19–74 JB Dennis Herman*
NUMBER DIVISION OF CRIMINAL INV.
*47700–15* Pierre, So. Dak. 57501"

"*75–3805*

"*Received from Herb
Hollingsworth at
10:30 a m 12–19–74
Jerry Baum
(68)*"

"*States Ex 1
7–8–75
mo*"

---

1. Handwritten matter is in italics.

The inner plastic bag contains the following information on a paper sticker:

```
                    PLASTIC BAG        75–3805
                    GRN/LEAFY MATERIAL
EVIDENCE            Article            Exhibit No.
SIRCHIE             RICH CARLSON – DENNIS OLSON
FINGER PRINT        Where This Article Was Found
LABS, INC.          H.  D.  Hollingsworth    12–18–74
Moorestown, N. J.   Investigation Officer        Date
```

The chain of custody testimony changed substantially at the trial. Carlson claimed that he knew the exact time he delivered the bag to Hollingsworth, i. e., 7:10 a. m., on December 18, 1974. Hollingsworth testified that he retained the bag in his possession until 10:30 a. m., on December 19, 1974, when it was delivered to Agent Baum. Baum's testimony changed and he asserted that he had received Exhibit 1 from Hollingsworth on December 19, 1974, and that it was not until December 20, 1974, that he mailed the bag to the state laboratory. The analyst from the state laboratory testified that he received Exhibit 1 in the mail on December 23, 1974. He further testified that he then marked the bag with "lab number 74–28–05."

Based upon the state's attorney's representation that the problem was the court reporter's error in attaching the wrong laboratory report to the preliminary hearing transcript, the trial court admitted Exhibit 1 over the defendant's objection and allowed Mathison to testify that it contained 0.94 ounce of marijuana. The trial court, after an unreported bench conference, refused to allow any cross-examination by defense counsel about the discrepancies concerning the exhibit.

■■■ Our discussion of this issue must be prefaced by recognizing that this court must take the record as it is settled in the lower court. *Davis & Daniels Co. v. McKillip,* 1917, 39 S.D. 544, 165 N.W. 380. The settled record imparts an absolute verity and is the sole evidence of the trial court's proceedings. *Boettcher v. Thompson,* 1906, 21 S.D. 169, 110 N.W. 108; *City of Sioux Falls v. Bohner,* 1972, 86 S.D. 527, 199 N.W.2d 499. At no time has the state made any attempt to correct errors, if any, in the

settled record or in the preliminary hearing or trial transcripts. The trial court has certified that the settled record is true and correct. SDCL 15–29–13.

The defendant claims that the state failed to establish a sufficient chain of custody of Exhibit 1 for its admission as evidence.

■■■ When real evidence is offered, an adequate foundation for admission requires testimony (1) that the object offered is the object which was involved in the incident and (2) that the condition of the object is substantially unchanged. If the object offered possesses characteristics which make it unique or readily identifiable, and if the composition of the object makes it relatively impervious to change, the trial court has the broad discretion to admit the object on the basis of testimony identifying the object as the one involved in the incident and that it is in a substantially unchanged condition. *State v. Christmas,* 1968, 83 S.D. 506, 162 N.W.2d 125.

However, where the offered object is not readily identifiable or distinguishable, or is susceptible to alteration by mistaken substitution, tampering, or contamination, a substantially more elaborate foundation is necessary. Such a foundation requires testimony tracing the "chain of custody" of the object with sufficient completeness to render it improbable that the original item has been mistakenly exchanged with another or has been altered by tampering or contamination. *State v. Christmas,* supra; *State v. Watson,* 1975, S.D., 231 N.W.2d 839; *State v. Anderberg,* 1975, S.D., 232 N.W.2d 254. *State v. Lunsford,* 1973, Iowa, 204 N.W.2d 613; 22A C.J.S. Criminal Law § 709.

Marijuana is an item which is not readily identifiable (see *State v. Grady,* 1972, Iowa, 201 N.W.2d 493) and, as amply displayed by the testimony in this case, subject to mistaken exchange or substitution as occurred at the preliminary hearing. Apropos is a quote cited by both parties in their briefs:

   " * * * In most cases it is not possible to establish the identity in question by a single witness, since the object or arti-

cle has usually passed through several hands before being analyzed [and] being produced in court, and *under such circumstances it is necessary to establish a complete chain of evidence, tracing the possession of the object or article to the final custodian, and if one link in the chain is missing the object or article cannot be introduced."* 29 Am.Jur.2d, Evidence, § 774. (emphasis supplied)

Although the identification of the exhibit can arguably be held to have been established until the time it was mailed to the chemist,[2] the chain of custody breaks following that transfer. The chemist's identifying laboratory number, "74–28–05," does not appear on either the inner or outer bag.[3] The state asked no questions which would show an ability on the part of the chemist to identify the exhibit by any other numbers or marks. Nor do his initials or signature appear on the exhibit, as was true of the DCI agents. See *State v. Quanrude*, 1974, Iowa, 222 N.W.2d 467.

In addition, the state established only that the exhibit was kept by the chemist until January 23, 1975, at which time he conducted the test and analysis of the material. The custody and safe-keeping of the exhibit from January 23, 1975 until the trial on July 8, 1975, is not the subject of any testimony. We are left to speculate whether it remained with the chemist or whether it was returned to the DCI agents.

Although the record is unclear, it appears that the trial court denied the defendant the right to cross-examine the chemist about the discrepancies for the purpose of a foundation for an objection to the admissibility of the exhibit. Although the trial court was misled by the explanation of the state's attorney, the prohibition of the cross-examination was error. The discrepancies in the chain of custody here went to the competency of the exhibit as evidence, not merely to its credibility, and the defendant was entitled to such a voir dire examination of the witness to support his objection.

Under the unique circumstances in this case, we find that the admission of Exhibit 1 without a proper foundation was reversible error. Therefore, the conviction and judgment are reversed and the matter is remanded for a new trial.

DUNN, C. J., and WOLLMAN and MORGAN, JJ., concur.

PORTER, J., concurs specially.

PORTER, Justice (concurring specially).

I concur in the opinion of the court, with the following exception.

I am unable to determine from the record that the trial court denied defendant the right to cross-examine the state chemist. We need not reach this issue in any event since we have held Exhibit I inadmissible on the record presented, and thus defendant could not be aggrieved even if denied such cross-examination.

2. The DCI agents were not questioned by the state concerning their ability to identify the marks which they placed on the exhibit, and we find it unnecessary to determine whether their identification was sufficient.

3. This situation is readily distinguishable from *State v. Watson*, 1975, S.D., 231 N.W.2d 839, where the laboratory number was still discernible; here, the laboratory number does not appear at all.