**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Larry SERL, Defendant and Appellant.**

**No. 12284.**

Supreme Court of South Dakota.

Argued June 7, 1978.

Decided Sept. 6, 1978.

B. Elizabeth Godtland and Leann Larson Finke, Asst. Attys. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

Neil Carsrud, Belle Fourche, for defendant and appellant.

PORTER, Justice.

## CASE SUMMARY

Defendant was convicted of distributing a controlled substance, phencyclidine (PCP) in violation of SDCL 39–17–88.[1] He appeals alleging as grounds for reversal that: (1) No sufficient chain of custody was proved for admission of the controlled substance, allegedly purchased from defendant; (2) the indictment should have been quashed because of procedural irregularities in grand jury selection; (3) he should have been permitted to inspect the grand jury minutes relating to his indictment; (4) he should have been granted a post-indictment preliminary hearing; and (5) the evidence was insufficient to sustain the verdict.

1. SDCL 39–17–88 provided:

Except as authorized by this chapter, it shall be unlawful for any person to manufacture, distribute, or dispense a substance controlled under this chapter, or to possess with intent to manufacture, distribute, or dispense, a substance controlled under this chapter.

This section was repealed by 1976 S.D.Sess. Laws, ch. 158, § 42–23. The criminal law relating to controlled substances was completely rewritten and is now contained in SDCL ch. 22–42 (Spec.Supp.1977). This change was effective October 1, 1977, 1977 S.D.Sess.Laws, ch. 190, § 641.

We hold that the State failed to establish a sufficient chain of custody for admission of the controlled substance which was allegedly purchased from defendant. The substance had no distinguishing characteristics. The State was therefore required to present some evidence which at least strongly suggested the whereabouts of the substance from the time it was purchased until the time of trial. Since the State failed to do so, we reverse.

We have also considered defendant's other grounds for reversal, since we find them relevant to a re-trial, and conclude that they are without merit.

## FACTS

Roger Stephans was employed as an undercover agent by the attorney general's office from June, 1976 until May, 1977. His job was to purchase drugs from those who wanted to sell. On the evening of September 3, 1976, he purchased from appellant, for $60.00, a tinfoil packet which defendant represented as containing cannabinol. Stephans placed the packet in his wallet.

At the time of this transaction, Stephans, with several other men, was living at a trailer house in St. Onge, South Dakota. In the early morning hours of September 4, 1976, there was a party at this trailer, and Stephans was present. Controlled substances were consumed at this party. Later Stephans, who still had the packet he had bought from defendant in his wallet, went to bed. He removed his pants (containing the wallet and the packet) when he went to bed. This sleeping pattern was repeated the next night. None of the residents of the trailer had a specific area in the trailer. Sleeping arrangements were, in Stephans words, "Pretty much open." No testimony detailing the whereabouts of Stephans, his wallet, or the packet during the period of September 6–8 appears on the record. On September 8 Stephans handed a packet from his wallet to a field agent of the State Drug Enforcement unit of the attorney general. The agent sent the packet to the State Chemical Laboratory, where it was found to contain PCP.

Defendant was charged with distribution of a controlled substance and arrested on October 20, 1976. The grand jury indicted him on November 23, 1976, and the preliminary information was dismissed on the same day. Defendant moved that a preliminary hearing be held. None was ordered. Defendant also moved for discovery of the grand jury minutes, which was also denied.

Defendant was convicted by a jury of distribution of a controlled substance on May 24, 1977.

## ISSUES

The major issues presented by this appeal are:

ISSUE ONE: Was the chain of custody adequate to render the controlled substance, allegedly purchased from defendant, admissible?

ISSUE TWO: Must the indictment be quashed because of procedural irregularities in grand jury selection?

## DECISION

ISSUE ONE

■ We conclude that the chain of custody was not adequate to render the controlled substance, allegedly purchased from defendant, admissible.

■ In considering the admissibility of demonstrative evidence, the trial judge must be satisfied in reasonable probability that the object sought to be admitted is the one involved in the case, and that it has not changed in important respects. *State v. Christmas,* 83 S.D. 506, 162 N.W.2d 125 (1968). He must consider the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of intermeddlers tampering with it. *State v. Christmas,* supra; *see also, State v. Herman,* S.D., 253 N.W.2d 454 (1977); *State v. Lange,* 255 N.W.2d 59 (N.D.1977).

■ If the object is readily identifiable because of its own characteristics, and its composition makes it relatively impervious to change, it may be admitted on testimony

identifying it as the object involved in the incident, if the witness can also testify that it is in a substantially unchanged condition, *State v. Christmas,* supra.

Where a substance is not readily distinguishable or is susceptible to alteration by mistaken substitution, tampering, or contamination, however, a more elaborate foundation is required. Such a foundation is laid by tracing the chain of custody of the object sufficiently to make it improbable that the original item has been exchanged with another or substantially altered. *State v. Herman,* supra. While it is not necessary to establish an absolutely perfect chain of custody, *see State v. Lunsford,* 204 N.W.2d 613 (Iowa 1973); *State v. Lange,* supra, the evidence (in this case the testimony of Roger Stephans) must at least "strongly suggest the exact whereabouts of the exhibit at all times," *Butler v. State,* 154 Ind.App. 361, 289 N.E.2d 772 (1972).

■ The "chain of custody" rule, requiring the prosecution to account for the whereabouts of physical evidence connected with a crime from the time of its seizure to its offer at trial is to insure that the real evidence offered is that object which was involved in the transaction, and that the object is in a substantially unchanged condition. Such requirements go to the competency of the evidence, not merely to its credibility, *State v. Herman,* supra. If the object is susceptible to alteration and the testimony does not strongly suggest the object's exact whereabouts, the court can only speculate on the origin of the object and its preservation.

■ The physical evidence in this case was susceptible to tampering. The packet itself is indistinguishable from other similar packets. It was not sealed. The white powder found inside is equally indistinguishable. It was necessary to perform several chemical tests before the substance was identified. In addition, Stephans testified that he did not mark the exhibit in any way until he gave it to the field agent five days after defendant sold it to Stephans. We must therefore review the chain of custody evidence in the light of the rules for objects which are susceptible to alteration.

Under these rules, the chain of custody was inadequate. The opportunity for tampering was substantial during the two-day period for which Stephans accounted. He stated that he was at a party where controlled substances were consumed, and that he slept that same night in the trailer house where that party took place. There were several users of controlled substances living there. When Stephans slept, he removed his pants which contained his wallet and the packet he had bought from appellant. This sleeping pattern was repeated the second night during which Stephans allegedly had the evidence.

We are unable to make any assessment of opportunities for tampering or exchange of the evidence during the remainder of the time that Stephans allegedly had the controlled substance. This is because he did not testify as to his whereabouts during the final three days he allegedly possessed the evidence. There is some cursory testimony stating that he was in the company of various drug users. He also testified that he kept the tinfoil packet in his wallet and that he did not remove it, open it, or tamper with it. There is no testimony, however, detailing possession of his wallet, and he does not say where he slept during these three days, nor under what circumstances.

■ Without such testimony or other chain of custody evidence,[2] it is conjectural to say that custody has been accounted for to a reasonable probability. In order to assess the probability of tampering, we must know what opportunities were present for such tampering. Without evidence of

---

**2.** Circumstantial evidence might also negative the probability of tampering, *State v. Lunsford,* supra; *State v. Lange,* supra; *Smith v. State,* 332 N.E.2d 121 (Ind.App.1975). There is no such evidence here, as there was in *State v. Lange,* supra. In that case it would have been necessary that someone break into an automobile in order to tamper with the evidence, which would probably have left marks on the car. Here, the packet could have been tampered with and refolded, leaving no trace of the tampering.

the opportunities, we can only speculate. Physical evidence cannot be admitted on such speculation. We conclude, therefore, that the packet and powder were inadmissible without further chain of custody evidence.

## ISSUE TWO

 We conclude that the indictment need not be quashed because of procedural irregularities in grand jury selection.

SDCL 23–29–3 sets forth grounds for challenge of a grand jury.[3] Defendant claims the right to challenge the grand jury under SDCL 23–36–1(4) as one who has not been "held to answer."[4] The grounds alleged for challenge are that the grand jury was not selected in the manner provided by law. Defendant alleges that more names were drawn than authorized in the court's order, that the first eight names drawn were not seated as grand jurors, and that one of the names drawn without court authorization was seated as a grand juror. See SDCL 16–13–19. The State stipulated that one of the extra names drawn without court authorization was seated as a grand juror.

Defendant has cited State v. Anderberg, S.D., 232 N.W.2d 254 (1975) for the proposition that the indictment must be quashed under these facts regardless of actual prejudice. We decline to follow defendant's interpretation of that case. First, the statement that a defendant has the abso-

lute right to challenge the grand jury, and thus to have the indictment quashed, is dicta on the facts of Anderberg. The indictment in that case was not quashed because the grounds alleged did not fall within SDCL 23–20–3 or 23–20–4. Second, it appears that this dictum was based upon several pre–1935 decisions.[5] In 1935, however, the legislature enacted the predecessor of SDCL 16–13–31, which requires a showing of actual prejudice before a panel of grand or petit jurors can be challenged, 1935 S.D.Sess.L. ch. 85, § 12. This statute supersedes the pre–1935 cases. Any dicta to the contrary in State v. Anderberg, supra, is disapproved. Since defendant has made no attempt to prove actual prejudice, and no evidence thereof appears on the settled record, we conclude that his contention on this issue is without merit.

## OTHER ISSUES

 Defendant has also assigned as error the trial court's refusal to allow inspection of the grand jury minutes. We dealt with a similar request in State v. Bad Heart Bull, S.D., 257 N.W.2d 715 (1977). We held that a defendant must demonstrate a "particularized need" for the minutes in order to overcome the public policy favoring grand jury secrecy. See SDCL 23–30–14; Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959). Defendant argues that the crucial nature of Roger Stephans's testimony fulfills this requirement. His discovery mo-

---

**3.** SDCL 23–29–3 provides:
 A challenge to the panel may be interposed by either party for one or more of the following causes only:
 (1) That the requisite number of ballots was not drawn from the jury box of the county;
 (2) That notice of the drawing of the grand jury was not given;
 (3) That the drawing was not had in the presence of the officers designated by law or in the manner prescribed by law.
 If a challenge to the panel be allowed, the grand jury must be discharged.

**4.** The phrase "held to answer" is not defined in the statutes relating to grand juries. A person who is "held to answer" before the indictment has the right to challenge the grand jury before, but not after the grand jury is sworn, except that the court may in its discretion allow a

challenge at any time before an indictment is returned, SDCL 23–29–2, 23–29–5. A person who has not been "held to answer" before the indictment may challenge the grand jury after the indictment, SDCL 23–36–1. Some confusion is created by the fact that SDCL 23–27–18 provides that a defendant is "held to answer" after the magistrate finds probable cause at the close of a preliminary hearing. Since we conclude that appellant's challenge to the grand jury lacks merit, we will assume, without deciding, that he was not "held to answer" prior to the swearing of the grand jury.

**5.** State v. Pickus, 63 S.D. 209, 257 N.W. 284 (1934); State v. Johnson, 50 S.D. 388, 210 N.W. 350 (1926); State v. Fellows, 49 S.D. 481, 207 N.W. 477 (1926).

tion, however, was not limited but asked for inspection and discovery of *all* grand jury minutes. This broad and unlimited request was properly denied. *State v. Bad Heart Bull,* supra.[6]

■ Defendant's next contention is that he should have been allowed a post-indictment preliminary hearing. He cites us to no South Dakota case or statutory law requiring such a hearing. Defendant asks that we adopt the reasoning of the Michigan Supreme Court in *People v. Duncan,* 388 Mich. 489, 201 N.W.2d 629 (1972). We decline to do so. South Dakota statutes guarantee that no person can be held on an information unless there has been a preliminary hearing or the defendant has waived such a hearing, SDCL 23–36–1(5). There is no similar guarantee for an indicted defendant. If such a rule is to be adopted, the legislature should so provide by statute. The preliminary hearing is a device for determining probable cause to hold the defendant, not a defense discovery device. *Janklow v. Talbott,* S.D., 231 N.W.2d 837 (1975). Once the grand jury has determined that there is probable cause, any preliminary hearing would be an empty gesture.

■ Defendant contends, finally, that the evidence was insufficient to sustain the verdict because the testimony of the undercover informant was contradicted by defense witnesses. We rejected a similar contention in *State v. Herman,* supra, and conclude that any factual differences between the two cases are insignificant on this point.

## CONCLUSION

For the reasons stated, we reverse the judgment appealed from and remand the case to the circuit court for a new trial.

All the Justices concur.

6. We note that the statutes relating to disclosure of grand jury testimony have been completely rewritten as a part of the comprehensive revision of criminal procedure in this state, 1978 S.D.Sess.L. ch. 178, §§ 140–153, § 577.