**STATE of South Dakota, Plaintiff and Respondent,**

v.

**William Anthony ROBINETTE, Defendant and Appellant.**

**No. 12133.**

Supreme Court of South Dakota.

Oct. 12, 1978.

Brent A. Wilbur, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Keith R. Strange, Jack Gunvordal, Legal Intern, Sioux Falls, for defendant and appellant.

ZASTROW, Justice.

This is an appeal from a conviction of unauthorized possession of a controlled drug or substance in excess of one ounce of which the defendant, on December 7, 1976, received a sentence of four years in the state penitentiary. We reverse the judgment and conviction.

## FACTS

The defendant lived in a small garage apartment in Madison about a block from the state college. The garage apartment was located in the backyard of a two-story, three unit apartment house. The yard separating the two buildings was approximately thirty-five to forty feet wide and was unfenced, with only a hedge along the alley on the west side of the lot.

The house apartments were rented and two upstairs apartments were occupied by college students. The upstairs apartments' entrance was located in the back, opening into the yard. Although the yard was available for the use of all of the tenants, it was only occasionally utilized by any of them.

On August 19, 1976, Mrs. Roberta Knox observed two planter boxes in the yard next to the hedge. Believing the plants growing in the boxes to be marijuana, she reported her observation to the police. After being shown a marijuana plant by the police, she executed an affidavit on August 20.

In her affidavit,[1] Mrs. Knox stated that she had observed "in Mr. Robinette's yard two wooden boxes," small enough to be moved easily, "containing several plants

1. Roberta Knox's affidavit was as follows:

Roberta Knox, who resides at 522 North Harth, Madison, South Dakota, being first duly sworn on her oath deposes and says:

That I am a resident of Madison, South Dakota living at 522 North Harth and living west of and across the alley from a garage house occupied by William Robinette. Yesterday, August 19, 1976, while walking my dog in the alley between the houses I observed in Mr. Robinette's yard two wooden boxes containing several plants that appeared to me to be marijuana. I have compared this with a sample shown to me by a Madison police officer and they appeared identical.

Affiant further states that on numerous occasions I have witnessed automobiles coming and going from Mr. Robinette's residence. A lot of the traffic took place in the winter when no plants were being grown. These vehicles would stay for one to ten minutes. On one occasion I counted six or seven vehicles in a period shortly over an hour. There has been continual heavy traffic in and out of the Robinette residence. I believe the Robinette residence has a Fifth Street address; the house sits immediately east of our house and west of the alley between Harth and Lee Avenues on the north end of the block, and is the only house on the south side of Fifth Street with a number.

The boxes that I observed our [sic] small enough where a person could remove them or move them into a house. Affiant believes that not only is there marijuana in the boxes in the yard but that there are illegal drugs in the Robinette residence.

WHEREFORE, affiant requests that the Court issue a Search Warrant to search the yard and home of William Robinette located as described above herein. The purpose of this search is to search and seize illegal drugs and paraphernalia connected therewith.

that appeared to me to be marijuana;" that the plants appeared identical to a sample of marijuana shown to her by a Madison police officer. Mrs. Knox stated that she also observed "heavy traffic in and out of the Robinette residence." Based on these observations, Mrs. Knox's affidavit concluded that there was marijuana in the yard outside the Robinette residence and that there were illegal drugs inside the Robinette residence.

Madison police officer, Lester Seitz, also executed an affidavit[2] stating that he had read Mrs. Knox's affidavit and talked to other neighbors in the area who confirmed that they also observed the unusual traffic and the boxes in the yard, growing what they believed to be marijuana. Seitz stated his belief in Mrs. Knox's reliability and credibility.

The two affidavits were presented to Clerk-Magistrate Anthony Benning, who put both affiants under oath and further examined them. Since no record was made of that examination, it is not clear what, if anything, was revealed that was not contained in the affidavits. Benning did testify, however, that to his recollection, the interrogation produced no information that was not contained in the affidavit. Benning also testified that he had recently lived in the apartment house and personally knew of its location, the existence of three apartments in the main house and the garage apartment, the common yard, and the distance between the two buildings. Based upon the affidavits and his personal knowledge, he issued the search warrant for the yard and the defendant's apartment.

The police placed the defendant's apartment under surveillance; when the defendant returned, the officers entered the yard and went directly to the defendant's apartment and served the search warrant on him. In searching the apartment, a growing marijuana plant and 1.22 ounces of marijuana seeds were discovered. The boxes in the yard were subsequently seized and the defendant was arrested for possession of a controlled substance.

## SEARCH WARRANT

The defendant contends that the evidence seized by the law enforcement officers should have been suppressed because there was insufficient information in the affidavits to establish probable cause to justify the issuance of the search warrant.

The state does not contend that the yard was an area within the curtilage where there was no "reasonable expectation of privacy,"[3] or an area open to the general

---

2. Lester Seitz' affidavit was as follows:

Lester Seitz, a police officer for the City of Madison, Lake County, South Dakota, being first duly sworn deposes and says:

That I have read the affidavit of Mrs. Knox, particularly concerning the marijuana plants in the boxes in the yard, and I have talked to other neighbors in the area who have confirmed that they also have observed unusual traffic in and out of the house and boxes growing plants they believe to be marijuana in the yard. I believe Mrs. Knox is a reliable, honest person and I know she holds a good steady job at the Madison Clinic. Based upon her observations and my discussions with neighbors, I believe that there are illegal drugs within the house occupied by William Robinette located between Harth and Lee Avenues on the north side of the block, facing Fifth Street. Mrs. Knox lives directly west of that house and personally has informed me that she has been in a position to, and has, made continual observations of the traffic in and out of said house. She contacted me on

August 19, 1976, to pass this information along.

WHEREFORE, affiant respectfully requests the Court issue its warrant for the search and seizure of the garage house and premises occupied by William Robinette located between Harth and Lee Avenues on the north end of the block facing Fifth Street in Madison, South Dakota, and directing that if such illegal drugs or property or any evidence or any part thereof be found that it be seized and brought before the Court together with such other and further relief as the Court may deem proper.

3. See, i. e., *United States v. Carriger,* 1976, 6 Cir., 541 F.2d 545; *United States v. Cruz Pagan,* 1976, 1 Cir., 537 F.2d 554; *Magda v. Benson,* 1976, 6 Cir., 536 F.2d 111; *United States v. Anderson,* 1976, 175 U.S.App.D.C. 75, 533 F.2d 1210; *United States v. Magana,* 1975, 9 Cir., 512 F.2d 1169; *Fixel v. Wainwright,* 1974, 5 Cir., 492 F.2d 480; *Wattenburg v. United States,* 1968, 9 Cir., 388 F.2d 853; *United States v. Miguel,* 1965, 2 Cir., 340 F.2d 812;

public. *People v. Hopko,* 1978, 79 Mich. App. 611, 262 N.W.2d 877. We therefore address the issue on the basis that the search of the yard, as well as of the defendant's apartment, required a search warrant.

The protection afforded by the Constitutions of the United States and South Dakota against unreasonable searches and seizures, United States Constitution, Amendment 4; South Dakota Constitution, Article VI, Section 11, has been thoroughly discussed by this court in *State v. Cundy,* 1972, 86 S.D. 766, 201 N.W.2d 236; *State v. Kietzke,* 1971, 85 S.D. 502, 186 N.W.2d 551; *State v. Cochrane,* 1970, 84 S.D. 527, 173 N.W.2d 495; *State v. Hermandson,* 1969, 84 S.D. 208, 169 N.W.2d 255.

■ It can be said without resort to further citation that searches and seizures by law enforcement officers can be predicated only upon probable cause. Probable cause is generally defined as the existence of facts and circumstances as would warrant an honest belief in the mind of a reasonable, prudent man acting on all the facts and circumstances within the knowledge of the magistrate that the offense has been, or is being committed and that *the property sought exists at the place designated.* See *State v. Hermandson,* supra; 79 C.J.S. Searches and Seizures § 74; 68 Am. Jur.2d, Searches and Seizures, § 68. All evidence obtained by searches and seizures in violation of the constitution, i. e., without probable cause, is inadmissible in a state court. *Mapp v. Ohio,* 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *State v. McCreary,* 1966, 82 S.D. 111, 142 N.W.2d 240.

■ In reviewing the determination of probable cause, we must consider only the evidence presented in support of the search warrant. *State v. Gerber,* 1976, S.D., 241 N.W.2d 720. In South Dakota, probable cause must be found in the affidavit, SDCL

23–15–2, or duly transcribed sworn testimony given before the warrant is issued. SDCL 23–15–8 requires that "the magistrate must, before issuing the warrant, take, on oath, the complaint of the prosecuting witness in writing, which must set forth the *facts tending to establish the grounds of the application or probable cause for believing that they exist.*" (emphasis supplied)

■ Defendant claims that the affidavits do not meet the requirement of *Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159, because they fail to recite the underlying facts and circumstances from which the magistrate can find that the affiants' conclusion that the evidence exists at the premises is warranted.[4] See also *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. We note, however, that the day before the search warrant was issued, Mrs. Knox observed planters appearing to contain marijuana plants located in the common yard. After confirming that the plants were marijuana, she recited both facts in her affidavit in support of the search warrant. This was sufficient to indicate that the "property sought exists at the place designated," *State v. Hermandson, Nathanson v. United States,* supra, and to justify the search of the common yard.

■ Although the affidavits would have been sufficient to justify the search of the common yard, they do not furnish probable cause for the search of the defendant's apartment for the following reasons: (1) The common yard separating the defend-

---

*United States v. Minker,* 1962, 3 Cir., 312 F.2d 632; *Garrison v. State,* 1975, 28 Md.App. 257, 345 A.2d 86; *State v. Crea,* 1975, 305 Minn. 342, 233 N.W.2d 736.

4. We are not concerned with the "reliability" requirement, inasmuch as Mrs. Knox was the

affiant making statements based upon personal observations, and she was personally known by the magistrate. See *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627; *State v. Haron,* 1974, 88 S.D. 397, 220 N.W.2d 829.

ant's apartment from the main apartment was approximately forty feet wide; (2) The box of marijuana plants was located about an equal distance from each building;[5] (3) Three apartments were located in the main house and occupied; (4) The yard was available for use by all of the residents of the apartments; (5) There was evidence that renters other than defendant used the yard at least as frequently as the defendant;[6] (6) The apartment was located within one block of the college campus; (7) The defendant attended college and worked; (8) No one had seen the occupants of the cars actually enter the defendant's apartment; (9) Neither Seitz nor Mrs. Knox had seen the defendant near the boxes. Accordingly, we cannot infer that the facts relating to the presence of cultivated plants in the common yard indicate the existence of probable cause to search defendant's apartment, or one of the three other occupied apartments sharing the yard. Without any facts linking the defendant to the planters in the common yard or some showing of criminal activity within the apartment, there was no probable cause for the issuance of the warrant to search defendant's apartment. *State ex rel. Garris v. Wilson,* 1973, 162 Mont. 256, 511 P.2d 15. Suspicions do not amount to probable cause for the issuance of a search warrant. *People v. Wirchansky,* 1976, 41 N.Y.2d 130, 391 N.Y. S.2d 70, 359 N.E.2d 666.

The state additionally relies upon the "heavy traffic" to the defendant's apartment as support for the conclusion that drugs would be found there. The existence of a large number of visitors to a college student's off-campus apartment during the school year can hardly be described as the type of conduct leading to the conclusion that drugs are located on the premises. This allegation is insufficient to establish probable cause to believe that a crime was being committed in defendant's apartment and it does not give additional weight to the other allegations contained in the affidavits. There must be a nexus between the heavy traffic and criminal conduct, and this nexus must appear in the affidavits in support of the search warrant. Even assertions that "known drug users and sellers" and "a known narcotics dealer" had made frequent visits to apartments later searched have been held invalid because they are merely a "bald and unilluminating assertion of suspicion . . . entitled to no weight in appraising the magistrate's decision." See *Alexander v. Superior Court of Los Angeles County,* 1973, 9 Cal.3d 387, 107 Cal. Rptr. 483, 508 P.2d 1131; *Metze v. State of New York,* 1969, D.C.N.Y., 303 F.Supp. 1359; *Spinelli v. United States,* supra. Innocent activity does not establish probable cause.

As is often true, however, the police and state's attorney did have information directly connecting the defendant to the marijuana in the planters. Mr. Neal Chancellor, a next door neighbor to the apartment complex, had observed the defendant watering the plants in the boxes on a number of occasions and had seen the defendant move the boxes and show them to several people. Officer Seitz had obtained this information from Mr. Chancellor; the state's attorney had interviewed Mr. Chancellor; and, Mr. Chancellor was outside of the magistrate's office when the search warrant was secured. His sworn testimony, which could have validated the search of defendant's house, was not given to the magistrate. A search warrant is only valid if probable cause has been shown to the magistrate. An inadequate showing may not be rescued after the fact on information known to the police or state's attorney at the time the search warrant is applied for. *Rice v. Wolff,* 1975, 8 Cir., 513 F.2d 1280. The evidence obtained as a result of the search of defendant's apartment is inadmissible and should have been suppressed.

---

5. The exact location of the boxes is not apparent from a reading of the transcripts.

6. There was evidence that the other apartment dwellers had a barbecue in the yard. At the trial, it was shown that defendant might also have had a picnic in the yard. There was no evidence, however, that the yard was exclusively used by the defendant.

## ISSUES

Of the remaining issues raised by defendant, we need only consider the question of the chain of custody because it, of necessity, will arise at the new trial.

The testimony indicated that the police officer who transported the defendant to the jail in Madison following the search and arrest, also transported all items seized under the warrant. The items, before they were transported, were placed in sealed plastic bags with evidence tags attached. The items were placed in the back seat of the police car. For a period of about five minutes, while the officer took the defendant into the jail, the items were left unattended. One of the police car doors may have been unlocked. When the officer returned to the car, he noted that the evidence was in the same position and the same condition as when he left it.

■ There is some question as to whether defendant's failure to make a timely objection at trial waives his right to raise this issue on appeal. Even if defendant could be considered to have preserved this issue, the decision to admit the evidence was proper. Where relatively indistinguishable items are offered into evidence, a chain of custody must be shown with sufficient completeness to render it improbable that the original item has been altered or tampered with. *State v. Herman,* 1977, S.D., 253 N.W.2d 454.

■ The requirement of the chain of custody is to insure that the real evidence offered is that which was seized and that it has not been substantially changed, altered, contaminated or substituted. The trial judge must examine the circumstances surrounding the preservation and custody to determine whether, in all reasonable probability, the item offered is the item seized and is substantially unchanged. The state need not negate every possibility of tampering or substitution, but rather show with reasonable probability that no tampering or substitution has occurred. *State v. Christmas,* 1968, 83 S.D. 506, 162 N.W.2d 125; *State v. Herman,* supra; *State v. Serl,* S.D., 269 N.W.2d 785.

■ The evidence here supports the conclusion that it was reasonably probable that the real evidence offered was that which was seized and that it was substantially unchanged.

## CONCLUSION

As a result of the admission into evidence of items obtained by an illegal search, defendant was convicted by a jury. We reverse that conviction and order a new trial.

WOLLMAN, C. J., concurs.

PORTER and MORGAN, JJ., concur specially.

DUNN, J., dissents.

MORGAN, Justice (concurring specially).

I reluctantly agree with the majority opinion. We have to review this on the cold record. As Dunn, J., notes, the magistrate did examine the affiant further, although I cannot say that it was a searching examination. He testified that no information was forthcoming that was not in the affidavits. Unfortunately no record could be made of the examination but, if anything further was unearthed, supplemental affidavits could easily have been prepared and filed.

And what of the witness waiting in the wings? I don't consider what he could have testified to appropriate for discussion on the question of adequacy of the showing for issuance of the warrant. His testimony is noteworthy only to show that the state apparently had additional information that was withheld. Apparently the state's attorney was willing to gamble on the skimpiest showing that he could get by with.

I fully appreciate that the magistrate was apparently not satisfied with the affidavits and took the initiative to conduct a hearing. However, absent some record of additional information to meet the *Aguilar-Spinelli* test, I would not hold that to be a cure for insufficient affidavits. Otherwise, every magistrate could merely place affiants under oath, conduct a cursory examination off the record, and defendant's

rights to challenge the sufficiency of the affidavits would be wiped out.

The *Aguilar-Spinelli* test is mandated by federal decisions [1] under the United States Constitution. This court is at liberty to impose stricter standards under the South Dakota Constitution [2] but we are not at liberty to impose lesser standards than the United States Constitution as interpreted by the United States Supreme Court.

I am authorized to state that Justice PORTER joins in this special concurrence.

DUNN, Justice (dissenting).

This conviction is being reversed because the majority finds that the affidavits were inadequate to show probable cause for a search warrant. The magistrate who issued the search warrant was likewise disturbed that the affidavits were not sufficient and only issued the warrant after a searching examination of the affiants under oath. This was not the pro forma issuing of a warrant on the basis of affidavits where the officers requested it. Unfortunately, no record was made of this examination by a lay magistrate who had no reporter available; however, if there had been any question raised as to the ownership of the marijuana plants outside the premises, after examining the affiants, we do know that the police had another witness outside the door prepared to testify that he had seen the defendant tending the plants.*

Do we set this magistrate up as a robot checking affidavits without giving any consideration to the fact that he carefully examined the affiants under oath? If so, we may as well dispense with the magistrate as a buffer between the state and the defendant and permit the police to issue their own warrants on their own affidavits. If no consideration is to be given to anything but the affidavits, the defendant would be as well protected.

The heavy traffic to and from defendant's home with marijuana plants fluttering in the breeze outside goes a little beyond "innocent activities." Mrs. Knox testified to as many as six or seven cars per hour with each staying only a few minutes. It is true that college students may gather at an off-campus apartment, but they tend to stay long enough for a little socializing. Giving deference to this careful magistrate who took his duties seriously enough to examine these affiants under oath in addition to all affidavits before issuing the warrant, I would affirm the conviction.

1. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

2. *State v. Opperman,* S.D., 247 N.W.2d 673 (1976).

* Regardless of measurements from back doors, these plants were growing next to the alley where the defendant's living quarters were located.