STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.* WILLIAM J. NELSON, ALIAS WILLIAM JAMES NELSON, ALIAS BILL NELSON, ALIAS WILLIAM NEWAL, ALIAS JIMMY LITTLE, ALIAS JAMES LITTLE, ALIAS WILLIAM NELSON, ALIAS WILLIAMS, DEFENDANT AND APPELLANT.

No. 9466.
Submitted June 18, 1956. Decided December 13, 1956.
304 Pac. (2d) 1110.

Messrs. Sandall & Moses, Mr. Charles F. Moses, Billings, and
Mr. John W. Mahan, Helena, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Hubert J. Massman,

Asst. Atty. Gen., Mr. Arnold A. Berger, County Atty., and Mr. John J. Cavan, Jr., Billings, for respondent.

Mr. Moses, Mr. Mahan, Mr. Massman and Mr. Cavan argued orally.

MR. JUSTICE ANGSTMAN:

Defendant was convicted of the crime of burglary, alleged to have been committed on or about January 21, 1954, and has appealed from the judgment of conviction. The state filed a motion to dismiss his appeal upon the ground that the court's order extending the time for a bill of exceptions granted the defendant until February 22, 1955, within which to file the same, but alleges it was not actually filed until May 12, 1955, and upon the further ground that the record shows that counsel for the state did not receive the two days notice required by R.C.M. 1947, section 94-7507, and, that the transcript fails to meet the requirements of rule VIII of this court and that the appeal should therefore be dismissed by virtue of subdivision 8 of that rule.

The record shows that the bill of exceptions is in two parts; one part relates to the proceedings on motion to suppress certain evidence, and the other part is upon the merits of the case.

Affidavits were presented by the defendant showing that the proposed draft of the bill of exceptions containing both parts was actually filed within the time granted by the court, and that both parts were actually filed and the clerk receipted for them on February 19, 1955, or three days before the expiration of the time granted by the court.

As to the failure to give notice of the hearing on the proposed bill of exceptions to counsel for the state under section 94-7507 it should be noted that no objection was made to the want of notice in the district court. Actually the county attorney stipulated that he had no amendments to offer and that the bill of exceptions as proposed was correct. This constituted a waiver of formal notice and counsel for the state is in no position to complain of the failure to comply with section 94-7507.

As to the third ground of the motion, it is complained that some of the documents are repeated in the transcript and that the transcript contains certain other records and proceedings which merely complicate it and serve no purpose in presenting the questions raised by the specification of errors. The state has been in no way prejudiced by the failure to strictly comply with rule VIII of this court in the mtaters complained of.

We call attention however to the fact that under subdivision ██ 3, rule VIII, the transcript should contain an alphabetical index. The index in the transcript is not arranged alphabetically. It simply lists the various papers and proceedings in chronological order as they appear in the transcript by page numbers. These rules should be observed. Their observance facilitates the labor of this court. Failure to observe the rules is ground for dismissal. We have determined, however, that we should not in this case dismiss the appeal for failure to strictly comply with the rules in this respect.

Coming to the merits of the appeal, the first contention made by the defendant is that the court erred in not sustaining his motion to suppress certain evidence procured in the case. The record relating to the motion to suppress discloses that defendant was arrested by two police detectives at the direction of R. L. Wilson, Chief of Detectives of the City of Billings. A burglary had occurred at Elliotts, Inc., a store situated at 2804 Minnesota Avenue in Billings. The building had been entered through a skylight, the safe had been pried open and the vault entered. Fourteen hundred thirty-six dollars and fifty-nine cents in cash was missing from the safe. The Billings Police Department was notified at about 8:45 a.m. January 22, 1954, and investigating officers immediately viewed the scene of the crime.

At about 3:40 p.m. on that day, Wilson received a telephone call from Mr. Vince Garvey, an F.B.I. agent in the Billings area. Wilson testified that Garvey told him that the defendant Nelson was in town; that he was at 613½ North 22nd Street in Billings; that he was driving a car with 2-D-3 1955 Montana

license plates on it, and that the car was sitting at 613½ North 22nd Street in Billings at that time.

It was discovered that license plates 2-D-3 had not been issued for use on the car in question. Nelson had the reputation of being a "safe" man. Wilson ordered two detectives to proceed to 613½ North 22nd Street to watch the car and to arrest whoever attempted to drive away with the car.

When the police officers arrived at 613½ North 22nd Street they found that the 2-D-3 license plates had been removed and the correct plates, numbered 3-22421, had been placed on the car. As defendant and his companion, Josephine Siegfried, entered the car they were stopped by the detective officers and arrested about 4:00 p.m., January 22, 1954. Nelson was ordered from the car and briefly searched. After being handcuffed, the defendant was placed in the police car and taken to police headquarters and booked for investigation of burglary in connection with the Elliott, Inc., burglary. Josephine Siegfried drove the car in question to the headquarters and in it was found a loaded .38 caliber revolver, as well as numerous burglary tools and some items of clothing. The license plate numbered 2-D-3, equipped with a special snap device for attaching it, was found in the car.

About two hours after Nelson's arrest his clothes were taken from his person. These clothes and certain items of clothing found in the car, along with a hat and some burglary tools which were taken from the scene of the crime, were separately wrapped and submitted to the F.B.I. in Washington, D.C., for examination. Expert testimony was introduced through laboratory technicians from the F.B.I. to the effect that chips of paint and fireproofing material from the safe were found in and on the defendant's clothing and on the hat and tools found in the car. There was evidence that the hat belonged to the defendant.

The articles seized at the time of the arrest and used in the trial consisted of a sledge hammer, hook bar and punch, screw driver, pry bar, drift punch, hat, gloves and a jacket; all of these save the jacket were taken from the car which the de-

fendant was in at the time of his arrest. The jacket taken was worn by the defendant when he was arrested and was removed from his person. Some property was taken from the apartment used by the defendant as his residence, but none of it was used in the trial. The record discloses that the car driven by the defendant at the time of his arrest was owned by Josephine Siegfried. The defendant disclaimed any ownership or right to possession of the car or of any property taken therefrom.

What was said by this court in State ex rel. Teague v. District Court, 73 Mont. 438, 441, 236 page 257, 258, rules this case so far as the motion to suppress is concerned. There this court said:

"Although the acts of the officers in searching this tunnel and seizing the still and mash found in it may have been unlawful as to the possessors of the tunnel, since relator disclaimed the right of possession of both the tunnel and its contents, he is not in a position to complain, as according to his own statements, he had no right in them and the acts of the officers therefore were not unlawful as to him. It is hardly necessary to cite authorities to sustain this determination, but reference is made to Driskill v. United States, 8 Cir., 281 F. 146, and Keith v. Commonwealth, 197 Ky. 362, 247, S.W. 42. In each of which a like result was reached under analogous facts."

This is the rule throughout the country, see annotations in 24 A.L.R., page 1425; 32 A.L.R., page 415; 41 A.L.R., page 1151; 52 A.L.R., page 487; 88 A.L.R., page 365; et seq.; 134 A.L.R., page 831; 150 A.L.R., page 577.

The court did not err in overruling defendant's motion to suppress the evidence of the articles taken from the automobile. So far as the jacket is concerned, the evidence shows that defendant surrendered it voluntarily to the police officers upon request and any right which defendant may have had to complain about its seizure was waived by him. State ex rel. Muzzy v. Uotila, 71 Mont. 351, 229 page 724; State v. Fuller, 34 Mont. 12, 85 page 369, 8 L.R.A., N.S., 762. Defendant's rights

were not infringed by the taking of his jacket and the using of it as evidence.

The next question raised by the defendant arose out of the following facts. The information charges the defendant with the crime of burglary in the first degree together with a prior conviction of felony by alleging that defendant was in the district court of Illinois, Eastern Division, "previously convicted under the name of William Nelson, otherwise known as James Little, on two counts, each amounting to a felony, to-wit: Transporting in interstate commerce and causing to be transported, a stolen motor vehicle and receiving, concealing, storing, bartering, selling or disposing of the stolen motor vehicle; said motor vehicle having been in interstate commerce, knowing the same to have been stolen." It was alleged that this judgment of conviction was made on the 11th day of February, 1935, and that defendant was sentenced to serve three years in the Industrial Home for Boys.

The information further alleges that William Nelson was in the District Court of the United States for the Southern District of California, Central Division, "previously convicted of the offense of felony, to-wit: Transporting and causing to be transported in interstate commerce, certain securities in violation of section 2314, Title 18, U.S. Code"; that this judgment of conviction was pronounced on the 13th day of March, 1950, and the defendant was sentenced to serve four years in an institution of the penitentiary type to be selected by the attorney general on count one of the indictment. The information further charges that defendant was in the District Court of the United States, Great Falls Division, previously convicted of the offense of transporting a stolen motor vehicle from Minneapolis to Great Falls; that judgment of conviction was pronounced on the 5th day of December, 1947, and the defendant was sentenced to serve one year and six months, to be committed to the custody of the attorney general of the United States, or his authorized representative.

The state, in proving the prior convictions, simply offered

the judgments of conviction and nothing more. Over defendant's objection the court then gave the jury the following instruction, which is substantially in the language of R.C.M. 1947, section 93-1301-7:

"Certain presumptions are satisfactory evidence, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following is of that kind: 1. Identity of persons from identity of name."

Defendant objected to this instruction upon the ground, among others, that it did away with the presumption of innocence which should attend the defendant throughout the trial. At defendant's request the court also instructed the jury:

"* * * that before you can determine the fact that the defendant has been convicted previously of a crime as alleged in the information then you must find beyond a reasonable doubt that the person whose former conviction is proved is, in fact, the defendant charged herein."

The court refused defendant's offered instruction to the effect that before he could be found guilty of the former convictions charged, the fact must have been shown beyond a reasonable doubt "by evidence independent of the record of former convictions, that the person whose former conviction is proved is in fact the defendant." The same question was also raised on motion to dismiss.

Defendant relies upon the case of State v. Livermore, 59 Mont. 362, 196 page 977, in support of his contention that before he can be convicted of the former convictions there must have been proof aside from the judgment of conviction that the person convicted was in fact the defendant.

This court in the Livermore case, 59 Mont. at page 364, 196 Pac. at page 977, said:

"In the case at bar the state is insisting upon an increased punishment upon the bare fact that the name of the defendant in the two cases is the same, without any proof, independent of the judgment-roll, to show it. Identity of name is presumptive evidence of identity of person * * * nothing more; but in a

criminal action it cannot be said, as a matter of law, that it takes the place of a showing beyond a reasonable doubt, that the defendant, previously convicted is the person against whom the substantive charge is made. * * * The court should have clearly announced that the presumption of innocence attending the defendant throughout the trial could only be removed by evidence *aliunde* the judgment, convincing the jury beyond a reasonable doubt that the A. B. Livermore on trial was the person against whom a similar judgment already stood.''

The state contends that this case differs from the Livermore case because there, unlike the case at bar, the court instructed the jury, as matter of law, that the name of defendant being the same as that of the person previously convicted, the presumption followed that he was one and the same person and that unless that presumption were controverted the jury were bound to find in accordance with it.

This distinguishing feature does exist between the two cases, but this difference does not obviate the necessity stressed in the Livermore case of producing evidence aside from the judgment itself that the William Nelson who stood convicted by the prior judgments of conviction was the defendant herein.

Many courts throughout the country support the view fol- ■ 7] ■ in the Livermore case to the effect that there must be proof of identity aside from the identity of names as shown by the judgment of conviction. They are listed in the annotation in 11 A.L.R. (2d) 887. See to the same effect Underhill's Criminal Evidence (4th ed.), section 829, page 1500, and 24 C.J.S., Criminal Law, section 1968, page 1165. Other courts take a contrary view. 11 A.L.R. (2d) page 884. Since that question was squarely passed upon in the Livermore case in support of defendant's contention, the issue is stare decisis in this state. Were we inclined to depart from the rule in any case we should hesitate to do so here where the name is such a common one and where there are no other attendant circumstances supporting the presumption. The rule is that the presumption of identity is weakened if the name be a common

one. State v. Bizer, 113, Kan. 731, 216 page 303; People v. Sberno, 22 Cal. App. (2d) 392, 71 Pac. (2d) 274.

On the authority of the Livermore case, the judgment here must be reversed unless there is merit in the contention of the state that defendant has not been prejudiced since the sentence has not in fact been increased over what it might or could have been without reference to the prior convictions. The jury expressly found that defendant was guilty of the crime as charged in the information, and it also found ''that the charge of previous conviction is true.'' The jury left the fixing of the punishment to the court. We are unable to say that defendant was not prejudiced by the introduction of the exhibits showing the prior convictions. Actually the jury might not have found the defendant guilty of the main charge were it not for the fact that he seemed to be an habitual criminal.

The case of State v. Harkness, 1 Wash. (2d) 530, 96 Pac. (2d) 460, lends support to the conclusion that defendant would not be prejudiced if the penalty actually imposed were not in excess of what could be imposed for guilt of the principal offense without reference to the prior convictions. But we think it is entirely probable that the jury would never have convicted the defendant upon the principal charge were it not for the judgments of conviction which seemingly stood against him in other jurisdictions. The court should have instructed the jury to disregard the judgments of the prior convictions since the state did not connect the defendant with such prior convictions.

Since the cause must be tried again, we call attention to the fact that if exhibit 21 should be offered as evidence on another trial the state must go further than it did here and prove that the crime involved was a felony with the meaning of R.C.M. 1947, section 94-4713 and section 94-4715. The exhibit does not show the nature of the crime involved.

The judgment is reversed and the cause remanded for a new trial.

476

MR. CHIEF JUSTICE ADAIR and MR. JUSTICES AND-ERSON and BOTTOMLY, concur.

MR. JUSTICE DAVIS: (concurring specially).

I do not agree that we may look to the affidavits before us to determine whether the defendant's second bill of exceptions which contains the proceedings had at the trial upon the merits was timely presented, settled and filed. The record there at best is equivocal; the attorney general's present objection to our consideration of this bill is on its face good. If however the fact be as the defendant's counsel contend that this bill was in truth presented in time, then the record in this court should be withdrawn and returned to the lower court for recertification by its clerk to show that fact before we take up the merits. We should enter an order to that effect. The affidavit of the deputy clerk filed here, which contradicts the certified record, is ineffectual to amend that record.

Since however a majority of my associates are of a contrary view, I necessarily acquiesce in what is therefore the decision of the court upon the point, and accordingly turn to the merits. There, upon the premise that the merits are properly brought before us by the two bills of exceptions which we have in the record, I concur in the reversal of the judgment of the district court, and as well in the reasons therefor which Mr. Justice Angstman gives in his opinion.