No. 12504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

STATE OF MONTANA, on the Relation of
LUTHER GARRIS,

Petitioner,

-vs-

THE HONORABLE ROBERT H. WILSON, District
Judge of Department No. 3 of the Thirteenth
Judicial District of the State of Montana,
in and for the County of Yellowstone,

Respondent.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Petitioner:

Berger, Anderson, Sinclair and Murphy, Billings, Montana
Arnold A. Berger argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena, Montana
J. C. Weingartner, Assistant Attorney General, argued,
Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Clifford E. Schleusner, Deputy County Attorney, argued,
Billings, Montana

---

Submitted: May 17, 1973

Decided: JUN 7 1973

Filed: JUN 7 1973

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

Original proceeding.

Petitioner alleges the respondent district court acted contrary to the laws of the state of Montana by refusing to suppress evidence in the form of drugs taken from the petitioner's room in an alleged, illegal search.

From the petition it appears that Garris lived in a house located at 620 Beverly Hills Boulevard in Billings, Montana, on October 13, 1972. This house had been rented by Frank Rodriguez from the owner and Garris paid his share of the rent to Rodriguez. At the time of the incident in question Rodriguez, Garris and at least one other individual lived in the house.

Complaints were received from neighbors by the Billings police and they kept the house under surveillance. As a result of this observation, the police officers sought a search warrant of the residence rented by Rodriguez and in the application for such warrant the defendant referred to therein is Frank Rodriguez, and it stated:

> "Your affiant has had the above described residence staked out for the past two weeks. During this time, many individuals have been observed entering the house, remaining a short time and leaving. On October 7, 1972, the brother of the defendant was observed carrying a plastic bag into the residence. The bag was approx. 20" long by 8" in diameter. Prior to entering he looked around and went quickly into the house. Your affiant was in a possition (sic) where the front of the house could be observed. On October 12, 1972 at 5:45 P.M. your affiant observed, through the front window of the house at 620 Beverly Hills Blvd., three people sitting in the living room. The defendant, his brother, and one unknown male were passing a small brass pipe between them and smoking the pipe. The pipe was lit nine times during a ten minute period. Based on the prior experience of your affiant as a member of the City-County Narcotics Squad, the pipe being smoked is the type used for hashish or marijuana. The inability to keep the pipe lit is

typical of smoking hashish or marijuana. On
October 13, 1972 at 5:30 P.M., your affiant
observed two males and one female come out of
the front door of the house and stand at the
front door. The defendant stood in the doorway
and the female passed him a plastic bag contain-
ing a green substance which appeared to your
affiant to be marijuana. This is the common way
of packaging marijuana. The four people talked
for about 1/2 minute. The defendant took the
plastic bag of what appeared to be marijuana
back inside the house and the other three people
walked across the street, got into an automobile
and drove away. Just prior to the incident
described, two men pulled up into the driveway in
a small car. The defendant came to the door of the
house, the passenger got out and talked with him.
Then got back into the vehicle and picked up a
grey brief case and he and the driver went into
the house. They remained in the house for about
20 minutes and left. Your affiant did not observe
the briefcase when they left."

This was the only information given to the justice of the peace

for the issuance of the warrant.

In conducting the search officers found in the false

ceiling above Garris' room a plastic bag containing 99 pheno-

barbital tablets. On the basis of this evidence Garris was

charged with the criminal possession of dangerous drugs. It

was this evidence that the petitioner sought to have suppressed.

The motion was denied by the respondent district court.

The issue in this case is whether there was a proper

showing of probable cause to search Garris' room.

It must be noted here that none of the persons referred

to in the application for search warrant was Garris; he was not

present on the premises at the time and his only connection with

the proceedings was that he had a room in the house.

Petitioner asserts the affidavit showing probable cause

lacks facts that would give rise to probable cause for the search,

in that there is nothing in the affidavit which would connect

Garris in any way with the activities mentioned therein.

In Application of Gray, 155 Mont. 510, 519, 473 P.2d 532

(1970) this Court stated the rule to be followed as to what type of facts must be contained in an affidavit for the issuance of a search warrant:

> " * * * Affidavits relied upon for the issuance of search warrants in both federal and state prosecutions must contain sufficient facts to enable an impartial commissioner or magistrate to determine whether probable cause exists under the Fourth Amendment. * * *"

The standard of review for this type of case is found in State v. Troglia, 157 Mont. 22, 26, 482 P.2d 143 (1971):

> "' * * * that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of common sense * * * and that their determination of probable cause should be paid great deference by reviewing courts * * *.'"

The task before this Court is to determine whether there were sufficient facts presented to the justice of the peace and whether he acted reasonably in the area of his discretion.

Before a search warrant can be issued the requirements of section 95-704, R.C.M. 1947, have to be met. It reads:

> "Any judge may issue a search warrant upon the written application of any person that an offense has been committed, made under oath or affirmation before him which:
>
> "(a) States facts sufficient to show probable cause for issuance of the warrant. * * *"   (Emphasis added.)

In this case it is apparent that the warrant was defective as to Garris because the application contains no facts that would indicate Garris had any connection with the offense being committed.  The application, as set out above, contains no facts disclosing that Garris was engaged in any of the activities mentioned.  There was no probable cause to believe he was committing an offense, hence no probable cause to search his room.  See St. ex rel. Glantz v. Dist. Court, 154 Mont. 132, 461 P.2d 193. To make such a showing places no great burden on law enforcement.

- 4 -

The United States Court of Appeals stated in Coury v. United States, 426 F.2d 1354, 1356 (1970):

> "We reach this decision by application of the following standards: only a probability of criminal conduct need be shown * * *." (Emphasis added.)

Here there is no showing at all of any criminal activity by Garris.

We must hold that the search was unreasonable as required by the United States Constitution and the 1889 Montana Constitution. The Fourth Amendment to the United States Constitution states:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

In this case Garris had a consitutionally protected right to expect to be free from government intrusion into his room. While it is true that Rodriguez rented the house from the landlord, Garris paid his share of the rent to Rodriguez. He had the use of his room to the exclusion of all others that were living in the house. Without some minimal showing of criminal activity on those premises on the part of Garris there was no probable cause for the issuance of the warrant and the search that was conducted was unreasonable and in violation of petitioner's rights.

This is a proper case for the use of the writ of supervisory control. We therefore order the issuance of a writ of supervisory control directing the respondent district court to reverse its ruling and suppress the evidence. It is further ordered that the information against Garris charging criminal possession of dangerous drugs be dismissed.

- 5 -

_____
Chief Justice

We concur:

_____
_____
_____
_____
Associate Justice

- 6 -