MR. JUSTICE DALY
delivered the opinion of. the Court.
Defendant was convicted by a jury of criminal possession of dangerous drugs in the Third Judicial District, County of Powell, on February 13, 1979, and received a deferred sentence.
On September 28, 1978, three officers responded to a complaint by John Wilson, an apartment building manager, that there was a loud party taking place in an apartment rented by one Annie Smith. The officer proceeded to Ms. Smith’s apartment but the noise and music was under control when they arrived. However, they did smell the strong odor of burning marijuana, though they could not determine exactly the apartment from which it emanated, as there were two apartment doors approximately four feet apart. The officers knew that the defendant was a frequent visitor at Ms. Smith’s apartment. One deputy approached the door *137 to the apartment beside Ms. Smith’s and was met by a tenant who informed the officer that the apartment Ms. Smith rented was across the hall.
The officers then approached Ms. Smith’s apartment and one of the officers knocked at the door which, they testified, swung open at the force of the knock. When the door opened the officers smelled a strong odor of burning marijuana. The officers walked in without express permission. One of the officers noticed some marijuana and drug paraphernalia on a coffee table.
They then arrested the people in the apartment and advised them of their Miranda rights. After the arrests were made, the officers asked Ms. Smith if they could search her apartment. They did not have either a search or arrest warrant. Ms. Smith initially refused to consent to the search, but after some coaxing by the officers plus their informing her that they would get permission from the landlord to search, she finally agreed to the search. Defendant, after arguing with the officers, eventually assisted them in their search, giving them some marijuana which had been located under a coffee table and was not in plain view and some stems and seeds from the kitchen. Defendant had no marijuana on his person.
Ms. Smith rented the apartment and was not dependent on her parents for support although she was only sixteen years old. Defendant alleged he was permanently residing in the apartment with Ms. Smith and that he paid rent for the apartment but had no contractual relationship with the landlord.
After his arrest, defendant moved to suppress the items seized in the search and dismiss the information on the grounds that the officers’ entry was unlawful and that the search was in violation of his constitutional rights. A suppression hearing was held on December 14, 1978, and briefs were filed. The motion to suppress was denied. At the trial, the jury found defendant guilty, and he was sentenced by the District Court. From this judgment and the denial of the motion to suppress, defendant brings this appeal.
Defendant-appellant presents the following issues for review by this Court:
*138 1. Does a person permanently living in an apartment have standing to suppress evidence for an unlawful entry and search when he was present on the premises?
2. Does the smell of marijuana constitute sufficient probable cause to make a warrantless entry into and search of a home?
3. Assuming probable cause, can the police enter a private residence without a warrant, exigent circumstances, or an invitation?
4. Did Annie Smith’s consent to search defeat any right of defendant to object?
Defendant initially contests the officers’ entry into the apartment where he was residing. He insists probable cause here was based solely upon the smell of marijuana and that this is insufficient for a search warrant, let alone a warrantless entry. Defendant submits he was permanently residing at his fiancee’s apartment and that under recent Supreme Court authority the test for Fourth Amendment violations is whether the defendant had a legitimate expectation of privacy in the place searched. Defendant argues he had a legitimate expectation of privacy because the place searched was his residence. Finally, defendant asserts that Montana’s constitutional right to privacy protects against the type of warrantless entry which took place here.
The State contends that Fourth Amendment rights are personal rights which may not be asserted vicariously and argues that defendant does not have standing to object to the search of Annie Smith’s apartment. The State further contends that the defendant did not have a legitimate expectation of privacy under the circumstances that existed in this case. The State argues that Annie Smith’s consent was valid and sufficient to override defendant’s objection to the search. Defendant, it is asserted, also waived any objection he had to the search when he aided the officers in the search of the apartment. The State insists that the officers had sufficient probable cause to enter the apartment and to make the arrests, and that once the arrest was complete, the officers had the right to make a search incident to an arrest.
*139 Initially we face the question of whether defendant had standing to suppress the evidence seized. Defendant contends that under the United States Supreme Court holdings in Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, and Rakas v. Illinois (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, he had standing to contest an unlawful entry and search of the apartment.
In Jones the defendant was present at the time of the search of an apartment which was owned by a friend. The friend had given Jones permission to use the apartment and a key to it, with which Jones had admitted himself on the day of the search. He had a suit and shirt at the apartment and had slept there for a night; however, his home was elsewhere. At the time of the search, Jones was the only occupant of the apartment, the lessee having gone away for several days. Based on the above facts the United States Supreme Court held that while one wrongfully on the premises could not move to suppress evidence obtained as a result of searching them, “anyone legitimately on premises where a search occurs may challenge its legality.” 362 U.S. at 267, 80 S.Ct. at 734.
Despite the urging by the defendant in Rakas to relax the rule in Jones, the Court declined to extend the rule of standing in Fourth Amendment cases and limited the broad language of Jones. It stated:
“We do not question the conclusion in Jones that the defendant in that case suffered a violation of his personal Fourth Amendment rights if the search in question were unlawful. Nonetheless, we believe that the phrase ‘legitimately on premises’ coined in Jones creates too broad a gauge Jor measurement of Fourth Amendment rights. For example, applied literally, this statement would permit a casual visitor who has never seen, or been permitted to visit the basement of another’s house to object to a search of the basement if the visitor happened to be in kitchen of the house at the time of the search. Likewise, a casual visitor who walks into a house commences and leaves one minute after the search ends would be able to contest the legality of the search. The first visitor would have absolutely no interest or legitimate expectation of privacy in the base *140 ment, the second would have none in the house, and it advances no purpose served by the Fourth Amendment to permit either of them to object to the lawfulness of the search.
“We think that Jones on its facts merely stands for the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place. [Citation omitted.] In defining the scope of that interest, we adhere to the view expressed in Jones and echoed in later cases that arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control. [Citations omitted.] But the Jones statement that a person need only be ‘legitimately on premises’ in order to challenge the validity of the search of a dwelling place cannot be taken in its full sweep beyond the facts of that case.
“Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), provides guidance in defining the scope of the interest protected by the Fourth Amendment. In the course of repudiating the doctrine derived from Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), and Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), that if police officers had not been guilty of a common-law trespass they were not prohibited by the Fourth Amendment from eavesdropping, the Court in Katz held that capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place. [Citations omitted.] Viewed in this manner, the holding in Jones can best be explained by the fact that Jones had a legitimate expectation of privacy in the premises he was using and therefore could claim the protection of the Fourth Amendment with respect to a governmental invasion of those premises, even though his ‘interest’ in those premises might not have been a recognized property interest at common law. [Citation omitted.]” Rakas v. Illinois, 439 U.S. at 141-43, 99 S.Ct. at 429-430.
*141 The Court went on to factually distinguish Rakas from Jones and stated:
“. . . Jones not only had permission to use the apartment of his friend, but had a key to the apartment with which he admitted himself on the day of the search and kept possessions in the apartment. Except with respect to his friend, Jones had complete dominion and control over the apartment and would exclude others from it. Likewise in Katz, the defendant occupied the telephone booth, shut the door behind him to exclude all others and paid the toll, which ‘entitled [him] to assume that the words he utter[ed] into the mouthpiece [would] not be broadcast to the world.’ [Citation omitted.] Katz and Jones could legitimately expect privacy in the areas which were the subject of the search and seizure they sought to contest. . .” 439 U.S. at 149, 99 S.Ct. at 433.
Similarly, in this case, defendant had a legitimate expectation of privacy in the apartment searched. He shared it with his girlfriend and except with respect to her had complete dominion and control over the apartment and could exclude others from it. Here, as in Jones and Katz, the defendant had a legitimate expectation of privacy in the areas subject to the search and seizure. Defendant was, therefore, entitled to contest the legality of the search and seizure.
Once it has been determined that defendant was entitled to contest the legality of the search and seizure, our analysis must shift to the question of whether the challenged search and seizure violated defendant’s Fourth Amendment rights. “That inquiry . . . requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.” Rakas v. Illinois, 439 U.S. at 140, 99 S.Ct. at 429.
Defendant contends that the police lacked sufficient probable cause to make a warrantless entry into the apartment. He concludes, therefore, that the entry was unlawful and any evidence seized should be suppressed. The State, on the other hand, contends that under the facts and circumstances of this case the police of *142 ficers had probable cause to believe an offense had been or was being committed before they ever entered the apartment, and therefore, they had the right to enter the apartment and make the arrest.
As the arrest, search and seizure were made without warrants, the outcome of this case rests on a determination of whether or not the search and seizure were made incident to a lawful arrest. The controlling issue, then, is whether defendant’s arrest was lawful at the outset, thereby justifying the subsequent search and seizure of the contraband which led to defendant’s conviction.
For purposes of this decision it is necessary to place the discussion of the plan view seizure of the marijuana on the coffee table and the subsequent search of the rest of the house on different planes. Our reasons for doing so will soon become obvious.
The lawfulness of defendant’s arrest must be measured by the standards prescribed in section 46-6-401, MCA. State v. Hull (1971), 158 Mont. 6, 487 P.2d 1314, 1319. This section provides in part:
“A peace officer may arrest a person when:
“(4) he believes on reasonable grounds that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest.”
Section 46-6-106, MCA, provides:
“Manner of arrest without warrant. A peace officer or person making an arrest without a warrant must inform the person to be arrested of his authority, if any, of the intention to arrest him, and the cause of the arrest, except when the person to be arrested is actually engaged in the commission of or in an attempt to commit an offense or is pursued immediately after its commission or after an escape or when the giving of such information will imperil the arrest.”
This Court has on previous occasions and under similar factual situations had cause to decide the issues presented here. In State v. Hull, supra, we determined defendant’s arrest was based on *143 reasonable grounds where, prior to their entry, arresting officers had received information from an informer that a “pot party” was in progress. When the officers arrived at the scene it was obvious from the music and noise that a party was in progress. They also smelled the aroma of burning or burnt marijuana emanating from the residence. After being told by the informer, who had just left the party, that there was hashish being smoked in the house, the officers entered the residence and arrested several persons, including defendant. A search of defendant yielded an amphetamine tablet. This Court held the entry into the residence without a warrant for purposes of effecting the arrest and searching defendant incident to that arrest was constitutionally and statutorily permissible, because there was sufficient probable cause to do so. Hull, 487 P.2d at 1320.
In State v. Bennett(1972), 158 Mont. 496, 493 P.2d 1077, police officers received information indicating drug activity was taking place at defendant’s apartment. They were also informed that one of the defendants was a drug dealer. Additionally, the landlady informed one of the officers that drugs possibly were being used in defendant’s apartment. Based on the landlady’s complaint and information received, the officers went to defendant’s apartment to investigate. When they arrived, they observed one of the defendants, a suspected drug dealer, enter the apartment. Upon approaching the apartment they noticed the odor of burning marijuana coming from the open door of the apartment. The officers entered the apartment, walked up a short stairway and observed the three defendants sitting around a table on which there was a marijuana roach and a clear plastic bag containing what they believed to be marijuana. The defendants were immediatley arrested and the marijuana seized. Even though the entry and search were conducted without a warrant, this Court held the entry into the apartment to arrest and the search incident thereto constitutionally permissible. State v. Bennett, 493 P.2d at 1082.
In our discussion in Bennett, we concluded that the facts therein came within the exigent circumstances exceptions to the warrant *144 requirement of the Fourth Amendment and Johnson v. United States (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. We also indicated that, while there is no “knock and announce” rule in Montana, where an officer is attempting to make an arrest without a warrant, he has the duty to inform the person to be arrested of his authority in so acting and the cause for so acting unless the arrested party is taken in the actual commission of the offense or has escaped and is immediately pursued. 493 P.2d at 1081.
Both Hull and Bennett were recently ratified by this Court in State v. Means (1978), 177 Mont. 193, 581 P.2d 406.
While we would be remiss if we did not voice our concern here that arrest and search warrants should be used as the rule and not the exception, sufficient exigent circumstances existed here, especially due to the involvement of juveniles, to justify the warrantless entry and arrest. Therefore, under this Court’s holding in Hull and Bennett, and based on the above facts, we find the District Court properly concluded that the officers had sufficient probable cause to make the warrantless entry and arrest.
The seizure of the marijuana on the table was also proper under either a “plain view” theory or a seizure incident to a lawful arrest theory. Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; State v. Hull, supra; State v. Bennett, supra; section 46-5-102(3) and (4), MCA.
While the officers’ initial entry into the apartment and the subsequent arrest and seizure of the marijuana on the table was valid, the so-called “consent” search of the rest of the apartment was unlawful. There is no doubt that the officers did not have authority to search the entire house. Section 46-5-102, MCA; Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. The inital break in the officers’ lawful conduct came when they secured Ms. Smith’s “consent” to search the house by fraudulently telling her that if she failed to consent they could gain consent to search the apartment from the landlord.
*145 When a law enforcement officer claims authority to search a home under a warrant, Bumper v. North Carolina (1968), 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, or threatens to obtain a search warrant, United States v. Boukater (5th Cir. 1969), 409 F.2d 537, or makes a flat assertion that he has come to search, Amos v. United States (1921), 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, “. . . he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion — albeit colorably lawful coercion. Where there is coercion there cannot be consent.” Bumper v. North Carolina, 391 U.S. at 550, 88 S.Ct. at 1792.
The officers in the instant case informed Ms. Smith that if she did not consent to the search they could secure consent from her landlord. Ms. Smith’s consent was bsaed on this fraudulent show of authority, and, as such, the consent was coerced and therefore invalid.
One other factor makes Ms. Smith’s consent invalid. Section 41-5-303, MCA, of the Montana Youth Court Act, provides:
“When a youth is detained for investigation or questioning upon a matter which could result in a petition alleging that the youth being detained is either delinquent or in need of supervision, the following requirements must be met:
“(1) The youth shall be immediately and effectively advised of his constitutional rights and his rights under this chapter.
“(2) The youth may waive such rights under the following situations:
“(a) when the youth is under the age of 12 years, the parents of the youth may make an effective waiver;
“(b) when the youth is over the age of 12 years and the youth and his parents agree, they may make an effective waiver; and
“(c) when the youth is over the age of 12 years and the youth and his parents do not agree, the youth may make an effective waiver only with advice of counsel.”
*146 The record reveals that the officers failed to read Ms. Smith or the other juveniles involved here their youth court act rights. Further, in order to effectively waive her constitutional or statutory rights the waiver must take place with the agreement of the youth and her parents or on advice of counsel. Ms. Smith’s parents were not informed nor was counsel obtained before the “waiver” of the rights and “consent” to search took place. There is no question that consent to search the premises required Ms. Smith to waive her Fourth Amendment right to be free of unreasonable searches under the United States Constitution. Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. Ms. Smith lacked the capacity to give this consent, and her consent to search was therefore invalid.
The State contends that defendant waived his right to object to the search when he helped the officers find the contraband, citing State v. Peters (1965), 146 Mont. 188, 405 P.2d 642. The facts of the instant case and those in Peters are distinguishable. In Peters the defendant volunatrily consented to the investigation and inspection of the calves on his ranch; here, the record reveals the defendant vehemently protested the search and informed Ms. Smith that she did not have to consent. It was only after the officers indicated they were going to search anyway that defendant helped them. These actions do not constitute a waiver by defendant of his right to object to the search. As the marijuana and seeds seized during the subsequent search of the house were “fruits” of an unlawful search, the District Court should have suppressed them. Wong Sun v. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.
The District Court could properly conclude that probable cause and sufficient exigent circumstances existed to justify the warrantless entry, arrest, and seizure of the marijuana on the table. The subsequent “consent” search of the apartment, however, was unlawful, therefore the contraband seized in that “search” should have been suppressed.
The judgment of the District Court is affirmed insofar as the entry and initial search and seizure of the contraband on the coffee *147 table. The remainder of the judgment is vacated and set aside. The cause is remanded to the District Court with instructions to dismiss with prejudice.
MR. JUSTICES SHEA and SHEEHY concur.