No. 81-18

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

HOWARD MICHAEL ISOM,

Defendant and Appellant.

---

Appeal from:  District Court of the First Judicial District,
In and for the County of Lewis and Clark
Honorable Peter Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Leo Gallagher argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
John Maynard argued, Assistant Attorney General, Helena, Montana
Charles Graveley, County Attorney, Helena, Montana
Steve Garrison argued, Deputy County Attorney, Helena, Montana

---

Submitted:  September 17, 1981

Decided:     JAN 2 1 1982

Filed: JAN 21 1982

*Thomas J. Kearney*

Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant was charged by information with possession of dangerous drugs with intent to sell, as provided in section 49-9-103(1), MCA. He pleaded not guilty. His motion to suppress was denied by the District Court of the First Judicial District, Lewis and Clark County. After a jury trial defendant was found guilty of felony possession of dangerous drugs, a lesser included offense of possession with intent to sell. On October 15, 1980, the defendant was sentenced to five years in the Montana State Prison, with two years suspended. Defendant appeals his conviction.

Based on information from an informant, the Lewis and Clark County Sheriff's Department placed under surveillance the residence located at 1014 Elm Street, Helena, Montana. About noon on January 11, 1980, two deputy sheriffs observed a man later identified as John Stemple, a suspected drug dealer, leave the Elm Street residence. He was carrying a large green garbage bag which he put into a tool box in the back of his pickup truck parked in front of the residence.

Stemple went back into the residence. A brown Ford station wagon pulled up. A man later identified as the defendant got out of the station wagon and went into the residence. Stemple then left the residence and drove away in his pickup, followed by the two deputies in an unmarked car.

According to the deputies, Stemple made evasive maneuvers by turning several corners sharply. They lost sight of Stemple and called for the aid of a third officer. The third officer stopped Stemple within a matter of minutes.

The officers searched Stemple's truck but could not find the green garbage bag that Stemple had placed in the tool box. Because of a recent snowfall the officers were able to retrace the tracks of the pickup. The tracks led to an alley behind a gas station where they found a large green garbage bag which apparently had been placed there recently since it was not covered with snow. The deputies looked inside the bag and found it full of marijuana contained in small plastic bags.

An officer went to get a search warrant for the Elm Street residence and for a maroon Chrysler Cordoba parked in front of the residence which the officers believed had been used to transport narcotics. A search warrant for both the residence and the car was issued by a justice of the peace. The warrant application contained the above information, except there was no mention of the surveillance being based on an informant's tip and no mention that John Stemple was a suspected drug dealer.

At least eight officers and the county attorney executed the search warrant. When the officers arrived at the Elm Street residence, they noticed that the motor was running on the Chrysler. A couple of officers stayed with the car, while the others went to search the residence. Defendant answered the door of the residence. The officers handed him the search warrant as they entered. Defendant was only wearing a pair of blue jeans. He testified that he was half-dressed because he was getting ready to take a shower. Defendant was ordered to sit on the couch and not to leave the room.

Defendant was the only occupant of the residence when

the officers entered. He was a guest of his uncle who rented the residence. He had been sleeping on the couch in the living room and had stored his belongings in the living room and in a bedroom.

The officers searched the entire house, finding marijuana residue and drug paraphernalia in nearly every room, including the living room, bathroom and kitchen. A small plastic bag of marijuana was found in the bedroom of defendant's uncle.

One uniformed officer was told to stay with defendant and watch him while the others completed the search. He asked defendant if he owned the car parked in front of the residence. Defendant said he did not own the car. In response to further questioning, defendant said he did not know who did own the car and did not know where the keys to the car's trunk were located. Defendant was not arrested prior to these questions and had not been given a Miranda warning.

The officers searched the car. Upon finding the glove compartment and the trunk locked, they forced the glove compartment open, and inside it they found a key to open the trunk. Inside the trunk the officers found several large green garbage bags which contained approximately eighty to ninety pounds of marijuana. After the search of the residence and the car, defendant was arrested.

At the suppression hearing, defendant introduced evidence to show that he owned the car in which the marijuana was found.

This case may be resolved by looking at the three primary issues presented:

1. Whether the defendant has standing to contest the legality of the search of the residence where he was an overnight guest;

2. Whether the defendant has standing to contest the search of his car and the garbage bags found in its trunk when he denied ownership of the car at the time of the search; and

3. Whether the District Court erred in its denial of defendant's motion to suppress evidence seized from the residence and the car.

With respect to defendant's standing to contest the search of the house, the State would have this Court adopt the perspective and reasoning of the most recent United States Supreme Court decisions which have overruled the automatic standing rule of Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. See, United States v. Salvucci (1980), 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619, and Rawlings v. Kentucky (1980), 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633.

Jones had set down two alternative holdings: (1) when the fruits of a search are proposed to be used against a defendant at the trial, he has "automatic standing" to contest the legality of the search; and (2) anyone "legitimately on the premises where a search occurs may challenge its legality by way of a motion to suppress". Jones, 362 U.S. at 267. The purpose of the automatic standing rule was to quash the "vice of prosecutorial self-contradiction" in which the State could charge a person with possession as a crime, and at the same time claim that the possession was not sufficient to give the person standing to challenge the

legality of the search or seizure. See, Brown v. United States (1973), 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208.

In overruling the automatic standing rule in Jones, both Salvucci and Rawlings relied heavily upon the earlier case of Rakas v. Illinois (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387.

In Rakas, the Court stated that the Jones test of "legitimately on the premises" cannot be taken in its full sweep beyond the facts of that one case. Rather, said the Court, the true test of whether a Fourth Amendment right has been violated is found in Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, in which the Supreme Court said that the capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Fourth Amendment has a legitimate expectation of privacy in the invaded place. Katz, 389 U.S. at 353; Rakas, 439 U.S. at 143.

Notwithstanding the limitations placed on Jones, the Court in Rakas, and again in Salvucci, emphasized that ownership is not a key element in determining standing. The test for standing is not to be based on distinctions out of property and tort law: "In defining the scope of that interest, we adhere to the view expressed in Jones and echoed in later cases that arcane distinctions in property and tort law between guests, licensees, invitees, and the like ought not to control." See Jones, 362 U.S. at 266; Rakas, 439 U.S. at 143; Salvucci, 448 U.S. at 91; and Rawlings, 448 U.S. at 105. The controlling view, then, seems to be that expressed in Mancusi v. DeForte (1968), 392

-6-

U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154, in which the Court said that the Katz test of "'legitimate expectation of privacy' makes it clear that capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place, but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion." See Mancusi, 392 U.S. at 368. (Emphasis added.)

Following the rationale that ownership is not the controlling factor in the determination of standing, although it is one factor to consider, the Supreme Court has pointed out that the actual holding in Jones was not overruled. In Rawlings, the Court referred to parts of Rakas which explained why the defendant in Jones would still have standing under the recent narrow tests for standing. The Court in Rakas reasoned that the defendant in Jones, who was using an apartment with the tenant's permission, would continue to have standing under the recent tests because the defendant "had complete dominion and control over the apartment and could exclude others from it." Rakas, 439 U.S. at 149. The Court in Rakas also reasoned that the defendant in Katz, who was in a phone booth, had standing to contest a search of the booth because he had an expectation of privacy when he "shut the door behind him to exclude all others and paid the toll." Rakas, 439 U.S. at 149.

In State v. Allen (1980), ___ Mont. ___, 612 P.2d 199, 37 St.Rep. 919, this Court quoted extensively from Rakas, acknowledging the distinctions between Rakas, Jones and Katz. See, Allen, 612 P.2d at 201-202.

Here, the District Court made two findings of fact

that relate to defendant's standing to contest the search of the residence: (1) that defendant was an overnight guest at the residence which was rented by his uncle; and (2) that defendant had stored clothing, luggage and other personal property in limited areas of the residence, none of which included the areas where the confiscated evidence was found.

Based on the above findings, the District Court concluded as a matter of law that "the defendant, being an overnight guest in the residence with items stored only in a limited area therein, had no reasonable expectation of privacy in the areas where the items were found, therefore, has no standing to object to their admission."

The fact that the defendant was an overnight guest should not control the determination of standing, although it is one factor to consider. As was noted in the above discussion, protection from unreasonable searches and seizures does not depend upon a property right in the invaded place, but rather upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion. See, Allen, 612 P.2d at 202.

Moreover, although the order of the District Court must be presumed correct upon appeal, State v. District Court (1978), 176 Mont. 257, 577 P.2d 849, the record clearly does not support the finding that confiscated evidence was not found in the areas where defendant had stored his personal belongings. Uncontradicted testimony at the suppression hearing showed that defendant slept on the living room couch while he was the guest of his uncle and that he stored his belongings in the living room and in his nephew's bedroom. Although evidence at the suppression

hearing showed that his uncle's bedroom was the only area where a small bag of marijuana was seized, it was made clear at the trial that evidence was seized from the living room table, from the living room fireplace, beside a wall in the living room, and from the living room closet.

Defendant was the sole occupant of the house at the time the search was made. Like the defendants in Jones and Katz, defendant could exclude all others except his uncle and family and had dominion and control over the premises at the time the officers entered the residence.

In summary, the District Court's conclusion that defendant lacked standing to contest the search of the premises must be reversed on the following grounds: (1) the fact that the defendant was an overnight guest should not control a determination of his standing to contest the legality of a search of the residence; (2) the record shows that confiscated evidence was found in areas where the defendant slept and where he stored his belongings; and (3) the record supports a finding that the defendant was the sole occupant of the residence at the time of the search and had control and dominion over it to the exclusion of others.

The State urges this Court that the next issue which must be discussed is whether defendant had standing to contest the search of his car. The State claims that because defendant denied his ownership of the car, he waived his Fourth Amendment rights in it and in the garbage bags found in its trunk.

The State argues that section 46-5-103(1), MCA, deprives the defendant of standing to contest the search of his car and the search of the garbage bags found in its

-9-

trunk. Section 46-5-103(1), MCA, provides:

> "No search and seizure, whether with or without warrant, shall be held illegal as to a defendant if:

> "(1) the defendant has disclaimed any right to or interest in the place or object searched or the instruments, articles, or things seized;"

The State's argument fails for two reasons: the disclaimer statute must be interpreted in light of the Fifth Amendment privilege against self-incrimination; and, a disclaimer of a car does not necessarily operate as a disclaimer of the closed containers in the car.

Although it has been held that the owner of a car or a container will lose his standing to object to the search of it if he abandons it prior to the time of the search, United States v. Anderson (5th Cir. 1974), 500 F.2d 1311; United States v. Colbert (5th Cir. 1973), 474 F.2d 174; and United States v. Miller (1st Cir. 1978), 589 F.2d 1117, a mere disclaimer of ownership in an effort to avoid making an incriminating statement in response to police questioning should not alone be deemed to constitute abandonment. See, LaFave, Search and Seizure, Vol. 3 at 581. Given the position that a defendant does not otherwise have to incriminate himself to preserve his Fourth Amendment rights, as in Simmons v. United States (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, it is difficult to understand how a refusal to make incriminating admissions in response to police interrogation can be held to deprive a person of Fourth Amendment standing.

To say that there is no Fifth Amendment violation because the defendant could have simply chosen to be silent is to ignore the whole line of principles set down in

*Miranda* and its progeny. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The point of the *Miranda* warning was to provide a safeguard against the coercive pressures of in-custody interrogation by police, when those pressures are so great as to undermine an individual's will, compelling him to speak when he would not otherwise do so. 384 U.S. at 467. "Custodial interrogation" was found to be inherently coercive. The *Miranda* Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444.

Clearly, the *Miranda* limitations should apply to disclaimers when the State uses them to deprive a person of Fourth Amendment standing.

Here, the totality of the circumstances suggests that the disclaimer resulted from "custodial interrogation." The defendant was told to sit on the couch and not leave. A uniformed officer was ordered to watch the defendant and stay with him while five other officers searched the house. The defendant was not free to walk around the house. The disclaimer was elicited from defendant by direct police questioning. Given this coercive atmosphere and the questioning, the State cannot be allowed to use such statements to deprive defendant of his Fourth Amendment rights.

Notwithstanding the Fifth Amendment limitations on section 46-5-103(1), MCA, and assuming that the disclaimer could be construed to deprive the defendant of standing to

contest the search of the car, in light of Robbins v. California (1981), ____ U.S. ____, 101 S.Ct. 2841, 69 L.Ed.2d 744, the disclaimer could not be construed to deprive the defendant of standing to contest the search of the garbage bags found in the trunk of the car.

In Robbins, the Court held that while police may have conducted a lawful search of an automobile under the automobile exception, they must nevertheless secure a warrant for any container found in the trunk of the car. The Court recognized that the expectation of privacy in a closed container taken from a car is not necessarily less than the privacy expectation in closed pieces of luggage found elsewhere.

Following a similar reasoning, it cannot be said that the defendant lost his expectation of privacy in the opaque garbage bags when he disclaimed ownership of the car. While it is arguable that the disclaimer weakened the defendant's expectation of privacy in the car, it cannot be said to have affected his expectation of privacy in the garbage bags. The disclaimer, therefore, in no way affected defendant's standing to contest the search of the garbage bags.

The next issue which must be discussed is whether the District Court properly denied defendant's motion to suppress. As many cases in Montana have held, when a search warrant has been issued, the determination of probable cause must be made solely from the information given to the impartial magistrate and from the four corners of the search warrant application. See, Art. II, Sec. 11, 1972 Mont. Const.; Thomson v. Onstad (1979), 182 Mont. 119, 594 P.2d 1137, 36 St.Rep. 910; State v. Olson (1979), 181 Mont. 323,

-12-

589 P.2d 663, 36 St.Rep. 146; State v. Leistiko (1978), 176 Mont. 434, 578 P.2d 1161; State ex rel. Townsend v. District Court (1975), 168 Mont. 357, 543 P.2d 193; Application of Gray (1970), 155 Mont. 510, 473 P.2d 532.

Here the evidence is uncontradicted that the only information given to the justice of the peace was the information contained in the search warrant and the search warrant application. Nevertheless, the District Court, in its order denying the motion to suppress, did not look to the validity of the search warrant and the sufficiency of the information before the neutral magistrate. Rather, the District Court looked to whether the officers had probable cause to search the residence and the vehicle parked in front of the residence. The District Court made the following conclusions of law:

> "The officer's observation of John Stemple leaving the duplex with a garbage bag later found to contain marijuana, when joined with the with prior knowledge of his drug sale involvement, and the information that the officers had received regarding the incoming marijuana shipment, gave the officers probable cause to believe that dangerous drugs or evidence of its possession would be found in the premises searched and in the vehicle searched." Conclusion of Law No. 3. (Emphasis added.)

> "The search of the automobile was also justifiable under the automobile exception to the search warrant requirements since there was both probable cause and exigent circumstances. The fact that evidence of dangerous drugs were found in the residence added to and enhanced the probable cause had by the officers for the subsequent Carroll search of the automobile." Conclusion of Law No. 4.

From these conclusions of law, it is clear the District Court, in making its determination of probable cause for the searches of the residence and the car, looked beyond the four corners of the search warrant application

and was thereby in error. In the above conclusions, the District Court looked to evidence that John Stemple was a known drug dealer and evidence of an informant's tip, neither of which were contained in the search warrant or the warrant's application.

Moreover, the District Court's reliance upon the information received from the informant was error since there was nothing in the record to satisfy the two-pronged test of Aguilar v. Texas (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. There was nothing in the record which showed "some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were," and there was nothing in the record showing "the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information was 'reliable'." Aguilar, 378 U.S. at 114. See also, Leistiko, 578 P.2d at 1163.

The District Court's determination of probable cause must, therefore, be vacated, and a new determination of probable cause must be made by looking to the four corners of the search warrant application itself.

It is well established in this state what type of facts must be contained in a search warrant application:

> "'. . . Affidavits relied upon for the issuance of search warrants in both federal and state prosecutions must contain sufficient facts to enable an impartial commissioner or magistrate to determine whether probable cause exists under the Fourth Amendment . . .'" State ex rel. Garris v. Wilson (1973), 162 Mont. 256, 511 P.2d 15, 17, quoting Application of Gray (1970), 155 Mont. 510, 473 P.2d 532.

Probable cause exists when the facts and circum-

stances presented to the magistrate would warrant an honest belief in the mind of a reasonable and prudent man that the offense has been, or is being, committed and "that the property sought exists at the place designated." See, State v. Robinette (S.D. 1978), 270 N.W.2d 573, 577. In other words, the search warrant application must recite the underlying facts and circumstances from which the magistrate can determine the validity of the affiant's conclusion that certain evidence exists at a particular premises. Nathanson v. United States (1933), 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159; see also, Aguilar, supra; United States v. Ventresca (1965), 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684; and Giordenello v. United States (1958), 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503.

Were the facts given to the justice of the peace sufficient to indicate that marijuana was located at the residence or in the car parked in front of the residence? We think not.

Stemple's mere taking of an opaque green garbage bag out of a residence and the finding of a similar green garbage bag in an alley near the spot where the deputies lost sight of Stemple's truck were the facts presented to the justice of the peace. Such facts do not establish probable cause for the search of the residence. The connection between the bag found in the alley and the residence is tenuous at best.

Likewise, the search warrant application fails to set out any underlying facts or circumstances that establish probable cause to search the car parked in front of the residence. The only reference to the car in the search

warrant is:

> ". . . that the resident of the above
> described duplex unit is the owner and was
> the driver of the described car when it
> arrived at the described residence early in
> the morning of January 11, 1980 and <u>your
> affiant believes that said vehicle was used
> to convey the marijuana and other dangerous
> drugs to the residence described</u>. . ."
> (Emphasis added.)

A mere affirmance of belief or suspicion by a police officer, absent any underlying facts or circumstances, does not establish probable cause for the issuance of a search warrant. See, Application of Gray, supra, 473 P.2d at 536; Nathanson, supra.

Absent probable cause, the searches of the house and car were in violation of the Fourth Amendment, and the evidence resulting from these searches is not admissible against the defendant. Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

Clearly, the introduction into evidence of the marijuana seized from the house and car constitutes reversible error since such evidence contributed to the conviction of the defendant. State v. Langan (1968), 151 Mont. 558, 445 P.2d 565; State v. West (1980), ____ Mont. ____, 617 P.2d 1298, 37 St.Rep. 1772. Since no other evidence introduced at trial would support a conviction, a new trial cannot be granted.

The judgment of the District Court is reversed and the cause dismissed.

_____
Justice

-16-

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Chief Justice Frank I. Haswell concurring:

I concur in the result.

_____
Chief Justice

Mr. Justice John C. Sheehy concurring:

I concur in the result.

_____
Justice

-17-

Mr. Justice Fred J. Weber dissents:

I would hold that the defendant does not have standing to contest the search of his car and the objects inside the car. A review of the search and seizure provisions of our code is enlightening. Section 46-5-101, MCA, describes the basis for a search and seizure and applies where a search is made incident to a lawful arrest, by the authority of a valid search warrant, under the authority of a right of lawful inspection, and of particular import here, "with the consent of the accused . . ." Here, section 46-5-101 is not applicable in any way. Note that if the defendant had consented to the search of his automobile, the code section would have been applicable. Section 46-5-102, MCA, describes the manner in which a peace officer may search following a lawful arrest, and again, this section is not directly applicable. Next, section 46-5-103, MCA, the section quoted in the majority opinion, provides in part:

> "No search and seizure, _whether_ _with_ _or_ _without_ _warrant_, shall be held to be illegal as to a defendant if:
>
> "(1) the defendant has disclaimed any right to or interest in the . . . object searched or the instruments, articles, or things seized." (Underscoring added.)

Section 46-5-103, MCA, is a codification of the rule established by this Court in State v. Nelson (1956), 130 Mont. 466, 304 P.2d 1110. The Court affirmed the refusal of the District Court to suppress evidence seized in a search of an automobile without a search warrant, where the defendant Nelson had disclaimed any ownership or right to possession of the car or of any property taken therefrom. This Court quoted from an earlier Montana case and stated:

"What was said by this court in State ex rel. Teague v. District Court [1925], 73 Mont. 438, 441, 236 [P.] page 257, 258, rules this case so far as the motion to suppress is concerned. There this court said:

"'Although the acts of the officers in searching this tunnel and seizing the still and mash found in it may have been unlawful as to the possessors of the tunnel, since relator disclaimed the right of possession of both the tunnel and its contents, he is not in a position to complain, as according to his own statements, he had no right in them and the acts of the officers therefore were not unlawful as to him. It is hardly necessary to cite authorities to sustain this determination, but reference is made to Driskill v. United States, 8 Cir., 281 F. 146, and Keith v. Commonwealth, 197 Ky. 362, 247 S.W. 42. In each of which a like result was reached under analogous facts.'

"This is the rule throughout the country, see annotations in 24 A.L.R., page 1425; 32 A.L.R., page 415; 41 A.L.R., page 1151; 52 A.L.R., page 487; 88 A.L.R., page 365; et seq.; 134 A.L.R., page 831; 150 A.L.R., page 577." State v. Nelson, 130 Mont. at 471, 304 P.2d at 1113.

This decision has not been overruled or modified.

The same view is expressed in ~~Colledge~~ Elledge v. United States (9th Cir. 1966), 359 F2d. 404, in which the Court of Appeals denied the motion to suppress evidence, where, in response to an officer's question as to what was in a package, the defendant had said, "I don't know. It's not mine." The court stated in part:

"Such disclaimer of ownership by the appellant is analogous to abandonment. Cf. Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). In both cases the same message, by act or word, is delivered to the officer: that as to the actor or speaker there is no interest which would be invaded by search or seizure. Lack of warrant does not under these circumstances render search or seizure unreasonable as to the actor or speaker." Gelledge v. United States, 359 F.2d at 405.

In a similar manner, in Rakas v. Illinois (1978), 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387, 395, the Court stated:

"A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a <u>search</u> <u>of</u> <u>a</u> <u>third</u> <u>person's</u> <u>premises</u> <u>or</u> <u>property</u> has not had any of his Fourth Amendment rights infringed." (Underscoring added.)

An extended discussion of cases with similar holdings does not appear appropriate. We do note that Wayne LaFave, a leading authority on search and seizure, distinguishes between abandonment and disclaimer of ownership. LaFave takes the position that disclaimer of ownership should not be held tantamount to a waiver of Fourth Amendment protection, but notes that a number of courts have so held. W. LaFave, 3 Search and Seizure §11.3 (1978, Supp. 1981).

Recent United States Supreme Court cases involving the question of standing to challenge the legality of searches, have emphasized the importance of a defendant's legitimate or reasonable expectation of privacy in the premises or objects searched. <u>Rakas</u>, supra; United States v. Salvucci (1980, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619; Rawlings v. Kentucky (1980), 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633. I am unable to see how the defendant could have had a reasonable expectation of privacy in opaque bags in the trunk of a car, when he had stated he did not own the car, he did not know who did own the car, and he did not know where the keys to the car's trunk were located.

The unfortunate result of the majority opinion is that, once again, reliable evidence establishing a clear basis for conviction is suppressed. The majority's broad application of the exclusionary rule has again exacted a substantial social cost. As stated in Rakas v. Illinois, 439 U.S. at 137, 99 S.Ct. at 427, 58 L.Ed.2d at 397:

> "Each time the exclusionary rule is applied
> it exacts a substantial social cost for the
> vindication of Fourth Amendment rights. Rele-
> vant and reliable evidence is kept from the
> trier of fact and the search for truth at trial
> is deflected. (Citations omitted)."

I would hold that the District Court properly denied the defendant's motion to suppress the evidence obtained from the search of the car.

                                              _____
Justice